Wilma HEIN, and others similarly situated, Plaintiff-Appellee,

v.

OREGON COLLEGE OF EDUCATION, Defendant-Appellant.

No. 82–3491.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1983.

Decided Oct. 17, 1983.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 28, 1983.

Don S. Willner, Willner, Bennett, Bobbitt & Hartman, Portland, Or., Jeanne Paquette Atkins, Arlington, Va., Lawrence White, Ann H. Franke, Washington, D.C., Judity E. Kurtz, Nancy L. Davis, San Francisco, Cal., Lawrence Z. Lorber, Stephen L. Samuels, Breed, Abbott & Morgan, Washington, D.C., for plaintiff-appellee.

Sheldon Elliot Steinbach, Washington, D.C., Richard Wasserman, Asst. Atty. Gen., Salem, Or., Woodley B. Osborne, Friedman & Wirtz, Washington, D.C., for defendant-appellant.

Before KILKENNY, CHOY and CANBY, Circuit Judges.

CHOY, Circuit Judge:

The appellees in this action are six female teachers at the Oregon College of Education ("OCE")[1] who have sued their employer under the Equal Pay Act of 1963, 29 U.S.C. § 206(d). After a bench trial, judgment was granted in favor of the teachers. OCE appeals. We reverse in part and vacate and remand in part.

## I
## BACKGROUND

OCE is a public college located in Monmouth, Oregon. Its predominantly female student body consists of both undergraduate and graduate students. The plaintiffs below come from two different departments. Dr. Wilma Hein, Dr. Lenore Campbell and Ms. Jacquelyn Rice teach in the Physical Education Department. Dr. Jean Ferguson, Dr. Gloria McFadden and Dr. Margaret Hiatt teach in the Elementary/Secondary Education Department. Each plaintiff sought to establish a violation of the Equal Pay Act by contrasting their remuneration with that of various male "comparators."[2] Each plaintiff proffered three or four comparators. For each plaintiff, the district court selected one

---

**1.** OCE is now known as Western Oregon State College.

**2.** The word "comparator," apparently referring to something with which something else is compared, is a new bit of legalese. The word does exist, but is usually used in a scientific

comparator. With one exception, discussed below in connection with the claim of Dr. Campbell, the court ruled that the excluded comparators did not have jobs substantially equal to those of the plaintiffs. Most of these exclusions were made on the ground that teachers of different academic disciplines do not have substantially equal jobs.

The court found that each of the six teachers established a prima facie case of discrimination by comparing their jobs and salaries to that of their comparators during the relevant school year of 1980–81. Furthermore, OCE failed to establish that the salary differentials were caused by a factor unrelated to sex. Lastly, the court found that the discrimination was willful, and enhanced the damages awarded accordingly. OCE contends that all three of these findings are clearly erroneous.

## II

### THE STATUTE

■ The Equal Pay Act of 1963 reads in pertinent part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provi-

sions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1). "The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning Glass Works v. Brennan,* 417 U.S. 188, 208, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1 (1974). It embodies the deceptively simple principle that "employees doing equal work should be paid equal wages, regardless of sex." H.R.Rep. No. 309, 88th Cong., 1st Sess. 2, *reprinted in* 1963 U.S. Code Cong. & Ad.News 687, 688.

■ To make out a case under the Equal Pay Act, a plaintiff must prove that an employer is paying different wages to employees of the opposite sex for equal work. *Corning Glass Works,* 417 U.S. at 195, 94 S.Ct. at 2228. The jobs held by employees of opposite sexes need not be identical, but they must be "substantially equal." *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). The question of whether two jobs are substantially equal is one that must be decided on a case-by-case basis. We review that finding under the "clearly erroneous" standard. *Id.* Once the plaintiff has established a prima facie case, the burden shifts to the employer to prove that the differential in wages is justified under one of the Equal Pay Act's four exceptions. *Corning Glass Works,* 417 U.S. at 196, 94 S.Ct. at 2229. Since this is a question of fact, it also is reviewed under the "clearly erroneous" standard.

The case before us actually consists of six separate cases. Each plaintiff's claim turns on separate factual considerations. We will examine each plaintiff's claim in turn. For organizational clarity, we will first consider the claims of the three plaintiffs from the Physical Education Department, and then those of the three plaintiffs from the Elementary/Secondary Education Department.

context that denotes an instrument used for making comparisons. *See* Webster's Third New International Dictionary 462 (1971). The genesis of its present incarnation is unknown

to us. The use of "comparator" in the context of the Equal Pay Act has convenience, if not elegance, to commend it.

## III

## THE PHYSICAL EDUCATION DEPARTMENT PLAINTIFFS

For each Physical Education Department plaintiff, we need only review the district court's finding that each made out a prima facie case of sexual discrimination under the Equal Pay Act.

All Physical Education Department plaintiffs established their prima facie cases by comparing their jobs and salaries with that of Mr. James Boutin, the men's varsity basketball coach. In 1979, Mr. Boutin was hired by OCE with an eye toward improving the fortunes of OCE's men's varsity basketball team. A special OCE committee was formed to select a new coach. Mr. Boutin was one of three finalists, and of these three finalists he demanded the lowest salary, $21,500. Dr. James Beaird, Provost at OCE, termed Mr. Boutin's hiring "a very key appointment." As an assistant professor at OCE during the 1980–81 school year, Mr. Boutin spent three-quarters of his time teaching and one-quarter of his time coaching.

### A. Dr. Wilma Hein

Plaintiff Hein came to OCE in 1973 as an associate professor in the Physical Education Department. At the time of trial, she earned $20,347. Although Dr. Hein had previously coached tennis and bowling at OCE, during the period of comparison with Mr. Boutin, Dr. Hein spent 100% of her time teaching lecture classes. She did not coach at all.

■ The lower court's finding that Dr. Hein and Mr. Boutin performed substantially equal jobs is clearly erroneous. While inconsequential differences in jobs may be disregarded, *Hodgson v. Corning Glass Works*, 474 F.2d 226, 234 (2d Cir.1973), aff'd sub nom. *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), the differences in job content between the positions held by Dr. Hein and

Mr. Boutin were not inconsequential. A coaching job plainly requires skills that a noncoaching job does not. Under the Equal Pay Act, jobs requiring different skills are not substantially equal.

■ The district court's error in this regard can be traced to its finding that "Dr. Hein's skills are equal to or greater than those of Mr. Boutin." *Hein v. Oregon College of Education*, Civil No. 79–757, slip op. at 10 (D.Or. Jan. 22, 1982) (hereinafter "Slip op."). A prima facie case is not made by showing that the employees of opposite sex possess equivalent skills. The statute explicitly applies to jobs that require equal skills, and not to employees that possess equal skills. *See Peltier v. City of Fargo*, 533 F.2d 374, 377 (8th Cir.1976). The lower court may have been impressed by Dr. Hein's academic credentials, and considered them as a counterweight to Dr. Hein's lack of coaching duties. This sort of consideration is improper. The only comparison of skills that should be made in a prima facie case is a comparison of skills required by a job. *See Salazar v. Marathon Oil Co.*, 502 F.Supp. 631, 636 (S.D.Tex.1980); 29 C.F.R. § 800.125 ("Possession of a skill not needed to meet requirements of the job cannot be considered in making a determination regarding equality of skill.").[3]

Since the finding that Dr. Hein made out a prima facie case under the Equal Pay Act was clearly erroneous, the judgment in her favor is vacated and the matter remanded for determining whether as to other men in the Physical Education Department Dr. Hein can establish a prima facie case under the Equal Pay Act in accordance with the guidelines we set forth *infra* in the cases of Dr. Lenore Campbell and Mrs. Jacquelyn Rice.

### B. Dr. Lenore Campbell

Plaintiff Campbell came to OCE as an assistant professor in the Physical Education Department in 1977, the same year she

---

3. An administrative interpretation of a statute by its enforcing agency, here the Department of Labor, is entitled to great deference. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). However, it must be noted that as time passes,

the deference due the regulations interpreting the Equal Pay Act will by necessity slacken, since these regulations, issued in 1965, have never been amended to reflect judicial constructions of the Act.

earned a doctorate degree from the University of Oregon. During her employment at OCE, Dr. Campbell coached women's volleyball, basketball, and track, and has taken OCE teams to the national finals in volleyball and track. Academically, Dr. Campbell has taught various upper and lower division courses, served on various OCE committees, supervised student teachers, and advised students. Dr. Campbell has developed several classes at OCE, one of which is required for graduation.

At the time of trial, Dr. Campbell was coaching two sports, volleyball and track. Coaching duties took up one-third of her duties; the other two-thirds were spent teaching physical education classes. Her salary was $17,485.

■ We cannot agree with OCE that the district court's conclusion that Dr. Campbell and Mr. Boutin perform substantially equal jobs is clearly erroneous. OCE's basic challenge to the district court's finding is that the jobs of Dr. Campbell and Mr. Boutin do not have equal responsibility. "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 800.129. OCE argues that the institutional importance attached to the position of basketball coach translates into a clear difference in the job responsibilities of Mr. Boutin and Dr. Campbell. Although we might accept this proposition were it presented to us *de novo,* sufficient evidence supports the district court's determination that the two jobs had substantially equal responsibility. There was no showing by OCE that a higher level of performance was expected from Mr. Boutin. The evidence that Mr. Boutin has a greater responsibility to the institution was equivocal at best. The only direct testimony on this question was that of Provost Beaird, who said that "the image of the college is often determined by the image of its *athletic teams.*" 5 R.T. 36 (emphasis added).

OCE also argues that the district court's ruling is contrary to *Jacobs v. College of William and Mary,* 517 F.Supp. 791 (E.D. Va.1980), *aff'd mem.,* 661 F.2d 922 (4th Cir.), *cert. denied,* 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981). In *Jacobs,* the plaintiff was a female coach of the women's varsity basketball team at the College of William and Mary. She sought to use as a comparator the coach of the men's varsity basketball team, Parkhill. The court found that the plaintiff could not establish a prima facie case of discrimination under the Equal Pay Act because the jobs were not substantially equal. However, the differences between the jobs compared in *Jacobs* is considerably more marked than is apparent from the record in this case. In *Jacobs,* the male employee, Parkhill, worked 12 months a year; the plaintiff only 9. Parkhill was responsible for extensive recruiting of prospective players; the plaintiff was never asked to recruit. Parkhill was expected to produce in order to bring in revenue to the school in the form of scholarship contributions and season ticket purchases; the plaintiff had no such responsibilities. 517 F.Supp. at 797–98.

The record in the present case does not indicate a difference in job content to the extent present in *Jacobs.* There is no evidence that Dr. Campbell and Mr. Boutin worked different portions of the year. The only evidence concerning recruiting responsibilities is a brief mention of *Dr. Campbell's* recruiting duties. All that is revealed by the record relevant to the revenue-producing status of men's basketball as compared to women's volleyball at OCE was evidence that admission was charged to spectators of men's basketball. The record does not reveal whether admission was charged to patrons of women's volleyball. However, the record is empty of reference to any responsibility of Mr. Boutin to generate income for scholarships or season tickets, as was required of the men's basketball coach in *Jacobs. Jacobs* is clearly distinguishable. *See generally* Green, *An Application of the Equal Pay Act to Higher Education,* 8 J. College & University L. 203, 208 (1981) (discussing comparison of physical education teachers under Equal Pay Act).

OCE's argument against the judgment in favor of Dr. Campbell is better construed as asserting that OCE derives greater benefits from Mr. Boutin than it does from Dr. Campbell. If this is the case, OCE may have a legitimate affirmative defense, namely, that the salary differential between Dr. Campbell and Mr. Boutin was caused by a "factor other than sex." 29 U.S.C. § 206(d)(1)(iv). *See generally Hodgson v. Robert Hall Clothes, Inc.,* 473 F.2d 589, 594–96 (3d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973). We need not review the district court's rejection of OCE's rebuttal case because we have determined that Dr. Campbell's prima facie case is flawed despite Dr. Campbell's proof of the substantial equality between her job and Mr. Boutin's.

The district court arbitrarily excluded one of Dr. Campbell's proffered comparators, Mr. Jon Carey, from comparison with Dr. Campbell because "Mr. Carey earns less than Dr. Campbell." In other words, the district court determined that even if Mr. Carey, the head women's basketball coach, has a job substantially equal to Dr. Campbell's, it will not be compared with Dr. Campbell's job to determine whether Dr. Campbell is subject to discrimination on the basis of sex. Under this reasoning, assuming that Mr. Carey's job is substantially equal to Dr. Campbell's, OCE prima facie discriminates against Mr. Carey on the basis of sex at the same time it discriminates against Dr. Campbell on the basis of sex.

■ We do not believe that the Equal Pay Act is subject to such manipulation.

The Act does not prohibit variations in wages; it prohibits *discriminatory* variations in wages. If it should turn out that Dr. Campbell earns *more* than males performing substantially equal work, it is axiomatic that the Equal Pay Act does not afford her relief. We thus agree with the Eighth Circuit that "a comparison to a specifically chosen employee should be scrutinized closely to determine its usefulness." *Heymann v. Tetra Plastics Corp.,* 640 F.2d 115, 122 (8th Cir.1981). There were 13 men teaching in the Physical Education Department at the time of suit,[4] yet the plaintiffs here, as in *Heymann,* chose a single employee for comparison apparently because he was the highest paid employee performing substantially equal work, not because he was the only comparable employee.

■ We believe that the proper test for establishing a prima facie case in a professional setting such as that of a college is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale. *See Heymann,* 640 F.2d at 122; *Melanson v. Rantoul,* 536 F.Supp. 271, 291 (D.R.I.1982).[5] This recognizes that in a professional setting, wage variations may stem from a multitude of factors that do not implicate sex discrimination. This conclusion is also in harmony with the language of the Equal Pay Act, which requires comparison to "employees" of the opposite sex. The Act speaks of employees only in the plural.

**4.** The district court stated that there are 13 women and four men on the faculty of the Physical Education Department. Slip op. at 16 n. 6. We assume this finding was a typographical error. Plaintiff Rice testified that there are 13 men and four women in the department. She identified the four women as the three plaintiffs from that department and one Barbara Louise Cusimano. 1 R.T. 94.

**5.** An individual might legitimately argue that but for sex discrimination, he or she would be paid a sum equivalent to the highest-paid individual of the opposite sex performing substantially equal work. This complaint, though, does not mean that the individual is not getting paid equal wages for equal work; it means that the individual properly deserves *more* than equal wages for equal work. In other words, for this hypothetical plaintiff, wages merely above the average paid to comparable workers of the opposite sex do not reflect an absence of discrimination. This sort of claim is simply not cognizable under the Equal Pay Act. The Act is a simple mechanism unsuited to the complicated salary determinations and calibrations that this sort of claim necessarily requires. The remedies and practice developed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* are more amenable to this sort of claim.

We thus vacate judgment in favor of Dr. Campbell and remand to determine whether her job is substantially equal to that of Mr. Carey, or of any other men in the Physical Education Department.[6] If so, Dr. Campbell may establish a prima facie case only if her wages are less than the average paid to Mr. Boutin, Mr. Carey, and any other appropriate male comparator. The average male wage, if still above the wages paid Dr. Campbell, should also be used as the benchmark figure for damages calculation. *See Melanson,* 536 F.Supp. at 291.

C. *Ms. Jacquelyn Rice*

Plaintiff Rice is the women's varsity intercollegiate field hockey and softball coach. At the time of trial, she was an associate professor in the Physical Education Department earning $18,063. Five-ninths of Ms. Rice's time is spent in athletics, either as an administrator or coach. As Women's Athletic Coordinator at OCE, Ms. Rice performs duties that include certification of team eligibility, budget preparation for both men's and women's athletics, and representation of OCE as delegate to the Association of Intercollegiate Athletics. As a coach, Ms. Rice has taken individuals and teams to national tournaments at least five times.

There is an obvious difference in the duties of Ms. Rice and Mr. Boutin. Ms. Rice has administrative duties that have no counterpart among Mr. Boutin's duties. This, though, does not remove Ms. Rice's complaint from the ambit of the Equal Pay Act. As stated in the interpretive regulations:

[W]here employees of opposite sexes are employed in jobs in which the duties they are required to perform and the working conditions are substantially the same, except that an employee of one sex is required to perform some duty or duties involving a higher skill which an employee of the other sex is not required to perform, the fact that the duties are different in this respect is insufficient to remove the jobs from the application of the equal pay standard if it also appears that the employer is paying a lower wage rate to the employee performing the additional duties notwithstanding the additional skill which they involve.

29 C.F.R. § 800.122(b). If an individual's Equal Pay Act claim could be defeated by showing that the plaintiff has additional duties that are not performed by the employees of the opposite sex, employers could easily subvert the intent of the Act by assigning additional duties to potential plaintiffs. Ms. Rice's additional administrative duties cannot, therefore, be a sufficient ground for overturning the district court's finding that Ms. Rice established a prima facie case. *See Usery v. Allegheny County Institution District,* 544 F.2d 148, 152–53 (3d Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977).

Ms. Rice's prima facie case is also challenged by OCE on the same basis that Dr. Campbell's prima facie case was challenged. In particular, OCE again argues that the district court was clearly erroneous when it decided that Ms. Rice and Mr. Boutin have jobs of substantially equal responsibility. Generally for the reasons discussed above in consideration of Dr. Campbell's prima facie case, we cannot say the district court's finding of substantial equality was clearly erroneous. Ms. Rice and Mr. Boutin are both teachers in the Physical Education Department who spend most of their time teaching physical education courses and also have duties coaching intercollegiate sports. Our review of the record does reveal that there are some differences between the positions of Ms. Rice and Mr. Boutin, but none compel reversal of the district court's finding of substantial equality.

**6.** The record does not indicate whether there may be men other than Mr. Boutin and Mr. Carey who have jobs substantially equal to that of Dr. Campbell. Nevertheless, a proper evaluation of the Physical Education plaintiffs' prima facie cases requires comparison of those plaintiffs' jobs with the true average of comparable male positions. Accordingly, on remand, any party may introduce evidence of other male comparators in the Physical Education Department.

Nevertheless, Ms. Rice's case suffers from the same infirmity as Dr. Campbell's. If both Dr. Campbell and Ms. Rice have jobs substantially equal to Mr. Boutin's, they both may have jobs substantially equal to that of Mr. Carey or other men in the Physical Education Department. The failure to consider at least Mr. Carey as a comparator for Ms. Rice thus calls Ms. Rice's showing of prima facie sex discrimination into substantial doubt. Accordingly, the judgment in favor of Ms. Rice is vacated and remanded for determining whether Mr. Carey or other men have jobs substantially equal to Ms. Rice's, and if so, whether Ms. Rice may still establish a prima facie case under the Equal Pay Act.

## IV

### THE ELEMENTARY/SECONDARY EDUCATION DEPARTMENT PLAINTIFFS

Each of these plaintiffs has been compared to a separate male comparator. We first consider the correctness of the district court's finding of prima facie sex discrimination in favor of each of these plaintiffs. We then address the court's treatment of OCE's affirmative defenses.

A. *Prima Facie Cases*

1. *Dr. Margaret Hiatt*

Plaintiff Hiatt has been teaching at OCE since 1949, when she was hired at a salary of $3,500. In 1956, she was awarded an Ed. D., and in 1963 attained her present rank of full professor. She has a national reputation in the field of education. At the time of trial, Dr. Hiatt was the second-highest paid person in her department, earning $28,209.

Dr. Hiatt's comparator is Dr. Jesse Garrison, the highest-paid member of the Elementary/Secondary Education Department. The district court found that "Dr. Garrison's work is the same as Dr. Hiatt's: teaching and advising students in the same or similar courses in the same department, and serving on committees." Slip op. at 15.

OCE concedes that Dr. Hiatt presents the strongest prima facie case among the Elementary/Secondary Education plaintiffs, but argues that deficiencies in Dr. Hiatt's proof require us to overturn the district court's finding. In particular, OCE argues that the district court's finding of a prima facie case can only be upheld if we determine that all teaching positions within an academic department are "fungible" for purposes of the Equal Pay Act. Rejection of that dubious proposition does not require us to reverse the finding of a prima facie case. Dr. Hiatt's testimony that Dr. Garrison has "exactly the same assignment in the same department that I am in," 1 R.T. 55, stands completely unrebutted. OCE has pointed to nothing in the record that would cause us to doubt this conclusion.

OCE further argues that because Dr. Hiatt is the second-highest paid member of her department and, by implication, there were lower paid males in her department, the finding of a prima facie case of sex discrimination is plainly wrong. The flaw in this argument is that there is no evidence that Dr. Hiatt's job is substantially equal to any men in her department other than Dr. Garrison. As we have noted above, *supra* p. 916, we look critically upon the use of a single comparator to make out a prima facie case. However, use of a single comparator is not clearly erroneous unless an appropriate comparator is wrongly excluded from comparison with the plaintiff. *See Heymann v. Tetra Plastics Corp.*, 640 F.2d 115, 122 (8th Cir.1981); *Melanson v. Rantoul*, 536 F.Supp. 271, 287 (D.R.I.1982). OCE has not suggested anyone other than Dr. Garrison with whom Dr. Hiatt should be compared.

The district court's finding that Dr. Hiatt and Dr. Garrison had substantially equal jobs is not clearly erroneous.

2. *Dr. Gloria McFadden*

Plaintiff McFadden has been with OCE since 1965. She is currently a full professor. At the time of trial, her salary was $21,874. Dr. McFadden's primary duty at OCE is working with undergraduate and

graduate students in elementary education. This duty involves participation in an "elementary block" program that goes for two or three terms and is followed by supervised student teaching. Dr. McFadden's responsibilities also include advising students and participating on various committees.

The district court found that Dr. McFadden's job was substantially equal to that of Dr. Robert Albritton. Dr. Albritton, like Dr. McFadden, teaches in the elementary block program and supervises the subsequent student teaching. He also advises students and participates on college committees. Dr. Albritton earned an annual salary of $23,328 at the time of trial.

OCE's primary challenge to the court's finding of substantial equality is that over the course of their respective careers at OCE, Dr. Albritton had taught 20 different courses, of which four were in the 500 level category, while Dr. McFadden has taught but 10 different courses, of which only two were at the 500 level. Thus, argues OCE, Dr. Albritton's job requires more skill than does Dr. McFadden's. OCE further argues that Dr. McFadden's failure to prove that she taught the same number of students as Dr. Albritton, or taught the same number of courses, or even graded the same number of papers, precludes a finding that a prima facie case of job equivalence has been made out.

Even if we were to assume that it takes greater skill to teach 500 level courses (and there is nothing in the record to support this assertion), OCE has not shown that there was any significant difference in job content during the 1980–81 school year. Dr. Albritton's greater teaching experience may constitute a valid reason for paying him a higher salary based on merit, but does not compel the conclusion that his job was not substantially equal to Dr. McFadden's during the period in question.

 As to OCE's other contention, we might agree in the abstract that a substantial disparity in the number of students or classes taught would render teaching jobs unequal. There is nothing in the record to suggest that such a disparity exists here.

The district court's finding of substantial equality is supported by substantial evidence and is thus not clearly erroneous.

### 3. *Dr. Jean Ferguson*

Plaintiff Ferguson has been at OCE since 1969, a full professor since 1979. She participates in the elementary block program and teaches classes entitled "Learning and Instruction in the Elementary and Intermediate Schools," "Teaching Reading in the Primary Grades," "Teaching Reading in the Intermediate Grades," "Diagnostic and Remedial Techniques of Reading," and "Methods and Materials in Language Arts." Every four to six terms, Dr. Ferguson teaches a series of 3-hour courses or supervises student teachers. Her other duties include participation on various college committees, service on national and state accreditation teams and, at the time of trial, presiding over OCE's Faculty Senate. Dr. Ferguson's salary at the time of trial was $20,174.

Dr. Ferguson's comparator was Dr. Gerald Girod. Dr. Girod, like Dr. Ferguson, teaches in the elementary block program. He has supervised student teachers more frequently than Dr. Ferguson. Outside of the block program, Dr. Girod's courses have focused upon psychology, research procedures, and curriculum, while Dr. Ferguson's courses, as listed above, concern reading and language arts. Dr. Girod serves on many college committees. At the time of trial, he earned an annual salary of $21,266.

 Dr. Ferguson's prima facie case is not as strong as the two other Elementary/Secondary Education plaintiffs, but it is strong enough to withstand "clearly erroneous" review. Both Dr. Ferguson and Dr. Girod devoted the bulk of their time to general preparation of teachers for the elementary grades. While the education specialties of the two teachers diverged outside of the block program, we cannot say that the divergence was so significant as to make the district court's finding clear error. Indeed, OCE has pointed to nothing in the record that would indicate any substantial difference in job content during the rele-

vant 1980–81 school year. The joint and primary duties of Drs. Ferguson and Girod in the elementary block program is sufficient evidence to support a determination that the two teachers were "similarly situated ... in the teaching structure." *Melanson v. Rantoul,* 536 F.Supp. 271, 287 (D.R.I.1982).

### B. *OCE's Affirmative Defenses*

Upon establishment of a prima facie case of sex discrimination, the burden shifted to OCE to establish that the differential in wages paid to workers of opposite sex was the result of "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974).

The district court found that the differentials in salary between the Elementary/Secondary Education plaintiffs and their male comparators were caused by the higher wages received by the male teachers when they began their employment with OCE. The court found that salary increases at OCE tend to perpetuate the differential in starting salaries. All parties seem to accept this conclusion as correct.

■ Salary differentials that stem from unequal starting salaries do not violate the Equal Pay Act if the original salary inequity can be justified by one of the four exceptions to the Equal Pay Act. In other words, salary differentials based on unequal starting salaries do not violate the Equal Pay Act if the employer can show that the original disparity was based on a legitimate factor other than sex. *See Padway v. Palches,* 665 F.2d 965, 969–70 (9th Cir.1982).

■ OCE presented considerable evidence that at the times of hiring, the male comparators deserved higher salaries than their respective female counterparts based on the abilities or capabilities of the teachers or the needs of the institution.[7] The court declined to make a finding as to whether OCE succeeded in proving that the salary differentials were legitimate. Instead, the court stated:

Each teacher brought to OCE unique qualities, experiences, and educational backgrounds. The court has no way to compare the value of 1949 dollars with 1959 dollars. The court does not know the teacher supply and demand for 1949, 1959, 1965, or 1969, nor does it know OCE's budget constraints or the competing needs of different departments during those years. There are many other factors that would be needed in order for the court to attempt to determine, using only these six teachers, whether the reasons for the differences in their starting salaries are related to sex. In fact, it is the court's opinion that such a determination cannot be made by scrutinizing the facts surrounding the hiring of six people, even if all of the factors mentioned above were known.

Slip op. at 27. Because of these enumerated difficulties, the court did not even address OCE's rebuttal arguments. Rather, the court relied upon statistical evidence showing that, on the whole, female OCE faculty members are paid less than male OCE faculty members, as the sole ground for determining that the salary differentials in the Elementary/Secondary Education Department could not be justified by a

---

7. For example, OCE introduced evidence that Dr. Garrison, the male comparator of Dr. Hiatt, arrived at OCE after 6 years' experience as an elementary school principal. This previous experience was directly related to his initial OCE assignment as principal of the campus elementary school. Dr. Hiatt did not have this administrative experience. Furthermore, Dr. Garrison held a doctorate when he was hired; Dr. Hiatt earned her doctorate after 7 years at OCE. The strength of OCE's affirmative defense of the disparity in the starting salaries of Dr. Hiatt and Dr. Garrison is illustrated by this excerpt from the cross-examination of Dr. Hiatt:

Q. You admit that, based on the record between yourself as compared to Professor Garrison at the time of hire, the school was justified in paying more money for him?

A. [Dr. Hiatt] ... At the time of hiring, yes.

1 R.T. 62.

factor other than sex. This was clear error requiring remand for further factfinding.

We agree with the district court that it is difficult to evaluate whether a pay differential is or is not based on a factor other than sex. But that does not mean that the question can be avoided by reference to generalized and, we think, irrelevant data. The question for each plaintiff is: Can OCE justify a starting wage lower than her comparator? If so, OCE has satisfied its burden, regardless of whether, on the whole, male faculty members earn more than female faculty members. It is irrelevant that the individual plaintiffs were hired in different years in light of the court's specific holding that all differentials were caused by starting salaries. The evidence shows that as a matter of fact, only Dr. Hiatt was hired in a year different from her comparator; this difference in starting years only makes it more difficult to determine whether Dr. Hiatt started at a relatively lower salary than Dr. Garrison, a question that the court specifically decided in the affirmative.

It is true that each faculty member considered here brought unique qualities to OCE. This special characteristic of an academic community, the uniqueness of its members, serves to emphasize the necessity for a thorough and sensitive appraisal of OCE's affirmative defenses. Post-hoc rationalizations, of course, will not permit OCE to carry its burden of proving the legitimacy of its payment of unequal starting salaries. However, as part of a sensitive inquiry into the roots of the salary differentials, it must be remembered that "[t]he Equal Pay Act entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives." *Kouba v. Allstate Insurance Co.,* 691 F.2d 873, 876 (9th Cir.1982) (citation omitted). On remand, if OCE can justify the differentials with legitimate institutional interests, the court should be slow to reject OCE's defense unless it determines that OCE's justifications do not reasonably explain the differences in starting salaries. *See id.* at 878. In this way, the court can "steer a careful course between excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior." *Powell v. Syracuse University,* 580 F.2d 1150, 1154 (2d Cir.), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978).

## V

## CONCLUSION

Our disposition makes it unnecessary at this time to review the district court's finding of willful sex discrimination.

The judgment is VACATED and the cause REMANDED for further proceedings consistent with this opinion.