EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, and Barbara
Contreras, Plaintiffs-Appellees,

v.

MARICOPA COUNTY COMMUNITY
COLLEGE DISTRICT,
Defendant-Appellant.

No. 83–2368.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1984.

Decided June 28, 1984.

Alice L. Bendheim, Bendheim & Mote, P.C., Phoenix, Ariz., Warren Bo Duplinsky, Washington, D.C., for plaintiff-appellee.

Richard S. Cohen, Lewis & Roca, Phoenix, Ariz., for defendant-appellant.

Before WISDOM,[*] WALLACE, and ANDERSON, Circuit Judges.

**J. BLAINE ANDERSON, Circuit Judge:**

Maricopa County Community College District (Maricopa) appeals the district court's decision finding Maricopa violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), in regards to the wages paid Barbara Contreras. We affirm.

## I. BACKGROUND

The case was decided on stipulated facts. In 1973, Contreras began working in the financial aid office of Phoenix Community College, one of seven such institutions overseen by the Maricopa County Community College District. Contreras's job classification was student loan clerk.

Sometime in 1976, she began to take on responsibilities beyond those required in her job description. She did this partly on her own initiative because the volume of work increased in the 1970's and she wanted to see that the work was completed, and partly on the initiative of her supervisor, Financial Aid Director Robert Kintz.

---

[*] The Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

In September of 1977, Contreras asked Kintz to place her in a higher job classification, that of financial aid assistant. She believed such a change was warranted because she had compared her duties to those of a male financial aid assistant who worked at another school in the district and found them to be the same. Kintz agreed, and submitted a reclassification request with the college's administration. Kintz did not have the authority to act on the request without approval from the college and Maricopa.

The college administration found merit in the request and forwarded it to Maricopa's central office. Maricopa told Kintz that pursuant to standard reclassification procedures, Maricopa's reclassification committee would consider the request in March of 1978.

In late 1977 and early 1978, Maricopa underwent a change in administration. The new administration decided to study Maricopa's entire job classification system and implement necessary changes. It retained a private firm to conduct the study. In the study, job positions and classifications were evaluated, not the specific employees and their performance within those classifications. In effect, it was a "comparable worth" study designed to determine the proper placement of a particular job in the salary structure based on the skills and responsibilities required. Importantly, Maricopa froze all reclassification requests such as Contreras's pending the completion of the study.

The study was not completed until March, 1979. It reclassified many positions, but not that of student loan clerk, and awarded employees whose positions were reclassified back pay retroactive to July 1, 1978.

Numerous employees were unhappy with the result of the study so Maricopa formed an appeals commission to review the complaints. In April, 1979, Contreras brought an appeal. In July, the commission affirmed the study's finding that the student loan clerk position was properly classified. The commission stated, however, that further review would follow to evaluate Contreras's individual situation.

Apparently displeased with Maricopa's handling of her claim, Contreras filed a charge of sex discrimination with the EEOC on July 13, 1979. In the meantime, Maricopa determined that Contreras did indeed qualify for reclassification and on August 29, 1979, it notified Contreras that she was being reclassified as a financial aid assistant. She did not receive back pay or seniority retroactive to when she initially sought reclassification in September, 1977.

On August 24, 1981, the EEOC commenced this lawsuit. It alleged that Maricopa had violated the Equal Pay Act, 29 U.S.C. § 206(d), by not compensating Contreras at a rate commensurate with the males classified as financial aid assistants. On April 9, 1982, Contreras filed a separate action, alleging that Maricopa had also violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* The district court consolidated the two actions. Maricopa later amended its answer to specifically raise one of the Equal Pay Act's affirmative defenses.

In late 1982, the parties filed a statement of stipulated facts and moved for summary judgment. The parties agreed that Equal Pay Act principles should govern the outcome of the action since Title VII would have the same effect. *See Kouba v. Allstate Insurance Co.*, 691 F.2d 873, 875 (9th Cir.1982). The district court, concluding that the plaintiffs had established a prima facie case and rejecting for insufficient proof Maricopa's affirmative defense that a factor other than sex accounted for the wage disparity, found Maricopa liable. It ordered that she be awarded back pay with interest in the amount of $8,833.74 and retroactive seniority and benefits.

Maricopa filed a timely appeal. It contests only the lower court's finding of liability. It does not dispute the amount of damages awarded.

## II. ANALYSIS

■ This case was decided on cross-motions for summary judgment, the granting

of which are generally subject to *de novo* review. *See Heiniger v. City of Phoenix,* 625 F.2d 842, 843–44 (9th Cir.1980). Here, however, summary judgment was based on the submission of a detailed stipulated record. This circuit has ruled that Fed.R. Civ.P. 52(a)'s clearly erroneous standard applies even though the findings of fact are derived from a written record or stipulated facts. *Nicholson v. Board of Education,* 682 F.2d 858, 864 n. 6 (1982); *Collins v. Thompson,* 679 F.2d 168, 170 (9th Cir. 1982); *United States v. Mountain States Construction Co.,* 588 F.2d 259, 264 n. 5 (1978); *Starsky v. Williams,* 512 F.2d 109, 111 (9th Cir.1975); *Lundgren v. Freeman,* 307 F.2d 104, 115 (9th Cir.1962); see the proposed amendment to Fed.R.Civ.P. 52(a) which would establish that the clearly erroneous standard applies to inferences drawn from written evidence, United States Judicial Conference, *Preliminary Draft of Amendments to Federal Rules of Civil Procedure* 5–7 (1983). The questions whether a plaintiff has established a prima facie case and an employer has sustained its burden of proving one of the exceptions to the Equal Pay Act are factual conclusions also subject to the clearly erroneous standard of review. *Hein v. Oregon College of Education,* 718 F.2d 910, 913 (9th Cir.1983).

■ If this case had been tried on stipulated facts, there would be no doubt then that the clearly erroneous standard of review should apply. The case was decided on summary judgment, however, where in our *de novo* review favorable inferences are drawn in favor of the losing party. *See, e.g., Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425, 428 (9th Cir. 1983). Here, the district court's factual conclusions, based on the stipulated facts, were drawn in favor of the EEOC and Contreras. In *Starsky v. Williams,* 512 F.2d 109, the court was presented with the same procedural posture as in this case. We concluded that the action should be reviewed as if the case had been tried on the written record. 512 F.2d at 113. The clearly erroneous standard was applied to the trial court's ultimate findings of fact,

which were based on inferences made from the undisputed written record. *Id.* at 111. We apply the same standard here. *See* Schwarzer, *Summary Judgment Under the Federal Rules,* 99 F.R.D. 465, 490–492 (1984).

■ The "deceptively simple" principle of the Equal Pay Act is that employees doing equal work should be paid equal wages, regardless of sex. *Hein,* 718 F.2d at 913. To establish a prima facie case of wage discrimination, a plaintiff must show that the employer pays different wages to employees of the opposite sex for substantially equal work. *Id.* (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)). To be "substantially equal," the jobs need not be identical, but must require similar skills, effort and responsibility performed under similar conditions; it is actual job performance requirements, rather than job classifications or titles, that is determinative. *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

■ Once a plaintiff offers sufficient evidence showing substantial equality in jobs and a disparity in wages, the burden of persuasion shifts to the employer to show that the disparity is permitted by one of the four statutory exceptions to the Equal Pay Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *see Hein,* 718 F.2d at 913.

We have little difficulty concluding that the district court did not clearly err in finding Contreras showed that she performed work substantially equal to that of the male financial aid assistants, except for lower pay. The question whether Maricopa offered sufficient proof of its "factor other than sex" defense is more troublesome, but our concerns are not such that we are left with the firm conviction that the district court arrived at a mistaken conclusion of

fact. *See Burlington Northern, Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 307 (9th Cir.1983).

### A. *Prima Facie Case*

■ Maricopa does not sharply dispute the EEOC's and Contreras's establishment of a prima facie case. In a 1980 letter to the EEOC, Kintz, Contreras's supervisor, and Carson, the Dean of Students, stated that since 1977 she had been performing the same job as two male financial aid assistants at other Maricopa colleges. Carson repeated that conclusion in a later memorandum. Contreras offered competent evidence to show that she was paid a lower salary than the financial aid assistants. We believe this is sufficient evidence to sustain the plaintiff's prima facie showing of wage discrimination. *See Katz v. School District of Clayton*, 557 F.2d 153, 156 (8th Cir.1977) (plaintiff established prima facie case when she showed she worked beyond her job description as an assistant teacher and began to perform duties equivalent to full-time male teachers).

■ Maricopa does contend that Contreras's work was not substantially similar to that of the financial aid assistants because she allegedly did not have the same responsibility. In particular, Maricopa states, Contreras did not have the general authority to make financial aid awards; Kintz checked all of her work except when he was ill or on vacation.

Minor differences in responsibility, however, do not make the equal pay standard inapplicable. 29 C.F.R. § 800.122 (1983); *see Hein*, 718 F.2d at 914; *Hodgson v. American Bank of Commerce*, 447 F.2d 416, 422 (5th Cir.1971). Also, in light of the admission of Maricopa administrators that the jobs performed were substantially the same, we believe it was incumbent for Maricopa to show that in fact the jobs had different responsibilities. Instead, while it is clear that Contreras lacked certain authority, the stipulated facts never established that the male financial aid assistants had any greater responsibility than Contreras. It perhaps can be inferred from the facts that more responsibility than that possessed by Contreras was held by the financial aid assistants, but we cannot say the district court clearly erred in failing to make that inference. Nor are we able to conclude that even if additional responsibility did exist, it was anything more than minimal, and insufficient to preclude the applicability of the Equal Pay Act.

### B. *Maricopa's "Factor Other Than Sex" Defense*

In its amended answer, Maricopa raised the affirmative defense that a factor other than sex accounted for the wage disparity. Maricopa argues that its job classification system and the freeze on position reevaluations operated without regard to sex, and Contreras was simply caught in a period of bureaucratic delay which had no invidious purpose.

The district court rejected Maricopa's defense somewhat summarily. Maricopa did not show, the court concluded, that the wage differential which existed in September, 1977, was attributable to a factor other than sex. In the district court's view, the classification freeze simply perpetuated a discriminatory situation. We find more merit to Maricopa's argument than did the district court, but nevertheless we see no reversible error.

The factor other than sex exception was intended by Congress to be a "broad general exception." *Kouba v. Allstate Insurance Co.*, 691 F.2d at 877 (quoting H.R. Rep. No. 309, 88th Cong. 1st Sess. 3, *reprinted in* 1963 U.S.Code Cong. & Ad. News 687, 689)). A primary purpose in adding this and the other exceptions was to permit employers to utilize bona fide gender-neutral job evaluation and classification systems. *County of Washington v. Gunther*, 452 U.S. 161, 170 & n. 11, 101 S.Ct. 2242, 2248 & n. 11, 68 L.Ed.2d 751 (1981) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 199–201, 94 S.Ct. 2223, 2230–2231, 41 L.Ed.2d 1 (1974)); *see Kouba*, 691 F.2d at 877; *Cayce v. Adams*, 439 F.Supp. 606, 608 (D.D.C.1977).

It is the desire of many employees, and certainly many of their employers concur, to develop more skills and training in order to work into a higher job classification with its increased responsibility and higher pay. That is what Ms. Contreras did. Partly on her own initiative and partly on that of her supervisor, she began to perform work substantially equal to that done by the male financial aid assistants at the other schools. No employer can be expected, however, to effect an immediate reclassification. It must be allowed a reasonable time to evaluate the position and the employee to see if reclassification is warranted. Also, the employer should be allowed to determine whether its organizational needs are such that an employee filling the higher position is necessary. If not, it may require the employee to stop working beyond his or her present job classification, as long as the decision to take that course is not made on account of the employee's sex. *See Cayce*, 439 F.Supp. at 609.

■ Here, however, the employer chose neither of those courses. Once it became aware that Contreras was performing work equivalent to the male financial aid assistants, but with lower pay, it was required to act within a reasonable time. *See Katz*, 557 F.2d at 156–157; *Nitterright v. Claytor*, 454 F.Supp. 130, 134, 137 (D.D.C.1978); *Cayce*, 439 F.Supp. at 609 & n. 3. Instead of requiring Contreras to work within her student loan clerk classification, it permitted her to continue working in the equivalent of the financial aid assistant position for almost two years before taking any action. And, when it did reclassify her, it did not give her back pay or retroactive seniority.

■ In this situation, we are unable to say the district court clearly erred in concluding that Maricopa did not prove a factor other than sex accounted for the wage disparity. It was just as reasonable to conclude, as in the district court's words, that "the ... reason for this wage differential was the availability of Contreras to work at the lower wage." C.R. 52 at 6.

Maricopa's reliance on *Strecker v. Grand Forks County Social Service Board*, 640 F.2d 96 (8th Cir.1980) (en banc) is misplaced. *Strecker* is somewhat similar to the case at bar in that it involved whether the operation of a job classification system could rebut the plaintiff's prima facie showing that she was entitled to compensation based on a higher job classification. *Id.* at 100. The court found that pursuant to objective, sex-neutral job classification standards, the plaintiff did not have the personal qualifications for the higher classification. Therefore, the factor other than sex defense was sustained. *Id.* at 103. In contrast, there was no showing whatsoever that Contreras did not possess the qualifications for the financial aid assistant position.

■ Maricopa also argues that there is no proof that the disparity in Contreras's pay can be attributed to her sex and points to the presence of a female financial aid assistant at a different school during 1977 and 1978. The existence of a female in the higher classification does not, however, defeat the plaintiff's prima facie showing of wage discrimination, *Board of Regents v. Dawes*, 522 F.2d 380, 384 (8th Cir.1975), cert. denied, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976), although we do believe it is relevant to the defense that a factor other than sex accounted for the disparity in treatment. While relevant, however, we do not believe that, standing alone, it is adequate to overcome the logical inference made by the district court: Maricopa was able to pay Contreras a lower wage because of her sex.

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.