Diane Y. GHIRARDO, on behalf of
herself and the general public,
Plaintiff—Appellant,

v.

UNIVERSITY OF SOUTHERN
CALIFORNIA, Defendant—
Appellee.

No. 04–55430.

D.C. No. CV–02–05506–NM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 2005.

Decided Dec. 2, 2005.

Robert E. Racine, Esq., Law Offices of
Robert E. Racine, Glendale, CA, for Plain-
tiff–Appellant.

J. Al Latham, Jr., Esq., Paul Hastings
Janofsky & Walker, LLP, Kelly J. Bendell,
Esq., University of Southern California,
Office of the General Counsel, Los Ange-
les, CA, for Defendant–Appellee.

Before BRIGHT,[*] B. FLETCHER, and SILVERMAN, Circuit Judges.

MEMORANDUM [**]

Appellant Diane Ghirardo appeals the district court's grant of summary judgment in favor of the University of Southern California ("USC") on her state and federal claims under the state and federal Equal Pay Acts, and state and federal claims of sex discrimination and retaliation after Ghirardo filed a charge with the Equal Employment and Opportunity Commission ("EEOC"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

*A. Equal Pay Claims*

■ We agree with the district court that Ghirardo failed to show that her *total* compensation was less than the average total compensation earned by her male colleagues who perform substantially equal work. A comparison of *annual raises* does not satisfy the Equal Pay Act inquiry, which compares "wages," defined to include "all payments" made to the employee "as remuneration for employment," and "all forms of compensation." 29 C.F.R. § 1620.10, *see also Hein v. Oregon Coll. of Educ.,* 718 F.2d 910, 916 (9th Cir.1983).

*B. Retaliation*

■ Likewise, we agree with the district court that Ghirardo failed to make a prima facie case of retaliation because she did not establish the necessary causal link between Ghirardo's protected activity—filing a claim with EEOC in May 2000—and the alleged adverse employment action—reduced annual raises in the years subsequent to the charge. *See Stegall v. Citadel Broad. Co.,* 350 F.3d 1061, 1065–66 (9th Cir.2004) (requiring showing of protected activity, adverse employment action, and causal link to establish prima facie case of retaliation). The record shows that Ghirardo received consistently low annual raises before she filed the EEOC charge in May 2000, as well as after. Ghirardo failed to establish that the low raises after May 2000 were the result of retaliation against her for filing the charge.

*C. Sex Discrimination*

■ The district court ruled that Ghirardo established a prima facie case for sex discrimination but that she failed to rebut USC's nondiscriminatory reasons for her reduced salary. We agree that Ghirardo failed to come forward with evidence that USC was motivated by discriminatory bias in the calculation of her annual raises. Her 1997 raise was zeroed-out by the dean after a finding by the USC grievance board that she engaged in misconduct. These facts do not give rise to an inference of bias. As for her poor raises in subsequent years, Ghirardo again failed to establish discriminatory animus. Dean Timme was within his discretion to take into account Ghirardo's undisputed failure to attend retreats, refusals to meet with him personally, and other instances of recalcitrance. In an effort to show pretext, Ghirardo relies on various statements allegedly made by Professors Dimster and Morland, members of the Executive Committee ("EXCOM"), which determines the initial ratings upon which each professor's annual salary is based. We agree with the

---

[*] The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

district court that these statements do not raise a triable issue. They are isolated, remote in time, and carry virtually no probative significance. Her allegation of bias in EXCOM is simply not supported by the record. Therefore, we affirm the district court's order granting summary judgment to USC on Ghirardo's state and federal claims of sex discrimination.

## D. Other Claims

█ The record supports the district court's ruling that the testimony of Ghirardo's experts was too attenuated from the actual process used by USC to evaluate Ghirardo to be probative of USC's discriminatory bias. We agree with the district court that Dr. Gorman's study was unreliable because it contained serious design flaws. Likewise, the district court did not abuse its discretion in declining to disregard Ghirardo's own deposition testimony. Finally, USC's routine destruction of EXCOM ratings sheets prior to 2003 pursuant to its policy does not give rise to the inference of bad faith on the part of USC. Cf. William T. Thompson Co. v. Gen. Nutrition Corp., 593 F.Supp. 1443, 1454 (C.D.Cal.1984) (finding defendants acted in bad faith by destroying relevant documents after commencement of litigation and in violation of two court orders).

AFFIRMED.

Concurrence by Judge B. FLETCHER.

FLETCHER, Judge.

I concur in the majority's opinion but write separately to express my concern that more than forty years after Congress passed Title VII, the entrenchment of the white male elite remains an intractable problem in many parts of academia. The architecture faculty at USC is not exempt from this problem. There is no doubt that Professor Ghirardo was a crusader for sexual and racial integration in the School of Architecture. The continued success of Professors Dimster and Steele, who reportedly harassed female students and students of color, in the face of chronically low numbers of women on the faculty, rightfully disturbed Professor Ghirardo. One cannot help but be suspicious of the low ratings she received from the faculty committee that influenced compensation adjustments when from all appearances she was a widely recognized academic star.[1]

Unfortunately, Professor Ghirardo did not at all times advance her cause appropriately. Her lack of balance and judgment, though caused no doubt by the Dean and the faculty's seeming insensitivity to an important problem, provided justification for the School's actions. In the end, her lack of cooperation, refusal to meet with the Dean, and her threats to a colleague gave an independent rationale for her low ratings.

Our opinion should not be taken as a vindication of the School of Architecture or the University. Perhaps under a new dean there can be a fresh start for both Professor Ghirardo and the School.

---

1. As an example of her achievements, in 2001 Professor Ghirardo was awarded both a Senior Fellowship by the National Endowment for the Humanities and a Fulbright Fellowship.