**Betty V. CAYCE, Plaintiff,**

v.

**Brock ADAMS et al., Defendants.**

**Civ. A. No. 77–0049.**

United States District Court,
District of Columbia.

Oct. 21, 1977.

Ronda L. Billig, Washington, D.C., for plaintiff.

Lawrence T. Bennett, Asst. U.S. Atty., Washington, D.C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GESELL, District Judge.

This civil suit tried to the Court arises under the Equal Pay Act, 29 U.S.C. § 206(d)(1)(1970), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(g) (Supp. V 1975). Plaintiff Cayce is a retired female employee of the Federal Aviation Administration ("FAA"). She sues the Department of Transportation and the Civil Service Commission alleging that a male, Thompson, was doing substantially equal work to that assigned plaintiff during much of her employment and that she failed to be promoted in violation of both statutes.

Plaintiff began as a GS–7 Statistical Assistant in the FAA Office of Management Systems. Her first level supervisor, Mr. King, sought to promote her to GS–9 in November 1973. A classification specialist employed by FAA conducted an audit of the position, and the position was upgraded to GS–8 as of January 1974. Plaintiff received GS–8 in February 1974. Mr. King again requested her promotion to GS–9. Following another audit it was again determined that the position did not warrant GS–9. Mr. King in the meantime revised the position description, and still another audit was made again to the effect the position did not warrant GS–9. At about this time, her previous objections to her classification having failed, plaintiff's sex discrimination complaint was filed and processed to no avail.

The Court finds that Cayce and Thompson were performing equal work on jobs requiring equal skill, effort, and responsibility, under similar working conditions from January 1974 to Cayce's retirement in December 1976. Cayce contends that her work was comparable to Thompson's beginning in June 1973. The evidence showed that full comparability was not achieved until Patterson, a female employee in grade GS–11, resigned on January 1, 1974. Cayce was then freed of Patterson's supervision and took over Patterson's work. Thereafter she performed in all respects as the equal

of Thompson, a GS–11. Thompson and Cayce sat at neighboring desks, developing and presenting comparable statistical publications widely relied on in government circles and in the trade. Thompson handled aircraft. Cayce handled flights. The publications differed, but the problems involved in extrapolating and presenting the requisite data were substantially the same. Both Thompson and Cayce handled inquiries from various persons in and out of the Government seeking information. They frequently interchanged in this respect. Their immediate supervisor believed they were doing substantially equal work. Both were highly rated employees and competent civil servants.

 It being clear that Cayce and Thompson worked side-by-side doing "equal work" at different pay, a prima facie violation of the Equal Pay Act has been shown. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). The statute provides four exceptions to liability, the last of which defendant relies on in justification for the disparity. Exception (iv) excuses any "differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).[1] The legislative history of the Equal Pay Act makes apparent, and the parties are agreed, that a "bona fide classification system" is a "factor other than sex," and therefore differences resulting therefrom are exempt under exception (iv). *Corning Glass Works v. Brennan*, 417 U.S. at 201, 94 S.Ct. 2223. Thus the focus of the controversy becomes whether or not the proof permits a finding that the classification system which so sharply differentiated between Cayce and Thompson can be said to have been "bona fide" within the meaning of the exemption.

 There can be no doubt that the Civil Service Commission and the FAA determine levels of compensation under a carefully developed classification system that is intended to operate fairly and even-

ly, treating all employees alike. Congress, of course, knew this when it made the Equal Pay Act applicable to federal employees as of May 1, 1974. Fair Labor Standards Amendments of 1974, Pub.L.No. 93–259, 88 Stat. 55. But however "bona fide" the Civil Service classification system appears on paper, if it is not applied in a sex-blind manner, differences are not entitled to exemption from the operation of the Equal Pay Act. A classification system reflecting differences based on sex, whether as drafted or as applied, cannot be bona fide. The question here is not the bona fides of the system as drafted but whether the system as applied benefited Thompson over the plaintiff because of his sex. If it did, the exemption is not available.

Even before Cayce took over Patterson's job in January 1974, Cayce's male supervisor, King, sought and for some time thereafter continued to seek a promotion for her. He knew that her work was equal to that of Thompson, and he endeavored to remedy the disparity by pressing for her promotion as quickly as possible. Under the Civil Service system, however, final authority for promotion in this instance rested with agency classification officials. Thus King's efforts necessitated a classification review of Cayce's position. The FAA classifiers, all female, proceeded by the book. They conscientiously examined Cayce's work and duties and concluded she was entitled to a GS–8 and nothing more. Several audits were done partly in response to Cayce's classification appeal but always with the same result. Hence she was not promoted.

 Although the proof is conflicting, the Court finds that the preponderance of the evidence establishes that prior to the audit of August 27, 1975, the classifiers were not aware that Thompson was performing "equal work" at the GS–11 level. Until this date, then, no Equal Pay Act violation occurred. The classification system operated imperfectly in allowing the

---

1. The exception itself seems redundant, since the statute only prohibits "discriminat[ion] . . . between employees *on the basis of sex*" (emphasis added). Obviously if discrimi-

nation is "based on any other factor other than sex" then it is not "on the basis of sex" and vice versa.

unjustified disparity in pay, but the imperfection was in no way sex-based. Therefore, the imperfection did not deny the classification system its "bona fide" status. Casual disparities between sexes alone will not invalidate the Civil Service system; the Equal Pay Act requires at least that those who can effectuate a remedy know of such disparity.[2]

After August 27, 1975, however, both the classifiers and the supervisor knew that if Cayce was not qualified for a promotion to GS–9 then Thompson was improperly classified at GS–11. There was a knowing failure to reduce him promptly,[3] and thus the classification system was not bona fide. The proof showed that when the discrepancy between Cayce's GS–8 and Thompson's GS–11 was noted by the classifiers, one of the classifiers indicated that if plaintiff were upgraded to GS–9, the two male GS–11's (of which Thompson was one) might have to be reduced to effectuate proper classification. King, however anxious as he was to have plaintiff promoted, was at least equally anxious, for understandable reasons, to do nothing that would demote two males in his unit paid at GS–11. He took no appropriate action, and the classifiers let

the matter drop. There was a knowing failure to pursue a classification investigation designed to put male and female employees doing "equal work" on an equal footing consistent with classification standards. The differential was sex-based as a matter of law and fact. Thus the classification system, as applied, was not bona fide.

In this instance neither the classifiers nor King were shown to have had any bias against females. Nonetheless the discrepancy was knowingly permitted. Since it differentiated between a lower paid woman and a higher paid man doing "equal work" and was shown to be sex-based, recovery under the Equal Pay Act must be granted from August 27, 1975. Defendants failed to establish that they acted "both in good faith and on reasonable grounds." Thus liquidated damages as provided in 29 U.S.C. § 216 (1970) are mandatory. *Laffey v. Northwest Airlines*, slip op. at 65–66, No. 74–1791 (D.C. Cir. Oct. 20, 1976).[4]

■ It remains to consider plaintiff's Title VII claim. A Title VII violation after August 27, 1975, was shown but is of no consequence, since plaintiff cannot reap overlapping relief under the Equal Pay Act

---

**2.** In most areas of the private sector the "employer" has the power to effectuate a remedy, and this is reflected in the language of the Act, which, when originally adopted, applied only to private employment. In the Civil Service context of this case the power to remedy an unjustifiable disparity in pay lies jointly with the supervisor and the classifiers. Without the classifiers' approval, Cayce's supervisor had no power to promote her. Without the supervisor's recommendation, however, the classifiers, except by random chance, would not have investigated her position. Therefore, under the Equal Pay Act the knowledge of the disparity of both the supervisor and the classifier are a prerequisite to liability.

**3.** The proper course in this case would have been promptly to downgrade the male GS–11 in accordance with classification standards (although even this might not have prevented a recovery for the interim period). This was eventually done—after Cayce's retirement. Plaintiff argues that such downgrading to eliminate a disparity would violate the plain language of the proviso to the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1970), which states:

*Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the

provisions of this subsection, reduce the wage rate of any employee.

The argument is not well taken. In downgrading, the FAA would simply be adhering to the objective dictates of the bona fide classification scheme and thus would be exempt from the operation of the Equal Pay Act. Indeed it is only defendants' failure to reclassify the men down to their proper levels that warrants a finding that the system did not operate in a bona fide manner. Legal arguments aside, it simply cannot be maintained that Congress intended to remedy every sex-based Civil Service misclassification by upgrading all those with the lower grade even when, as here, the classification standards indicate that the lower grade is the correct one. Such a practice would result in widespread grade inflation and thus threaten the integrity of the entire Civil Service system.

**4.** The Court also finds the defendants' actions to be "willful" within the meaning of the Act, 29 U.S.C. § 255(a) (1970), although the Court's disposition on the merits avoids the necessity for any decision as to whether a two- or three-year statute of limitations applies.

and Title VII for the same wrong. *Id.* at 69 n. 282. Plaintiff also alleges a Title VII violation for a period before August 27, 1975, coincident with and predating the Equal Pay Act claim. The proof does not support this earlier violation. There was no pattern of sex discrimination in the unit. Plaintiff's male supervisor constantly sought her promotion. She filled the position of a higher paid female who retired, and another woman in this small unit was graded higher than Thompson. Moreover, the classifiers were all female. They did their work conscientiously in examining her duties uninfluenced by any factor which even suggested that female work should be underclassified.

Plaintiff shall receive twice the difference between her GS–8 compensation and the amount she would have received had she been promoted to GS–11 on August 27, 1975, for the period beginning on August 27, 1975, and ending at her retirement on December 31, 1976. An appropriate adjustment of her retirement benefits shall also be made. Counsel are directed to confer and to present within ten days a form of judgment and decree covering the award. Plaintiff is entitled to reasonable attorney's fees and costs under 29 U.S.C. § 216(b) (1970) and shall submit a claim for such fees and costs within thirty days.

SO ORDERED.