**Rhonnie J. MOLDEN and Patricia A. Roderick, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 376–84C, 377–84C.**

United States Claims Court.

Feb. 3, 1987.

Robert A. Filpi, Chicago, Ill., for plaintiffs.

Mary Mitchelson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. George R. Salem, Barton S. Widom and Mark Maxin, Dept. of Labor, of counsel.

## OPINION

MOODY R. TIDWELL, III, Judge:

■ This is a civilian pay case which comes before this court on cross motions for summary judgment. Plaintiffs' actions have been consolidated under Rule 19(a)(2)(ii) of the United States Claims Court. The Claims Court has jurisdiction over the subject matter of this suit under 28 U.S.C. § 1491 (1982).[1]

Plaintiffs are female Employment Opportunity Specialists with the Office of Federal Contract Compliance Programs in Chicago. They are employed at the GS–11 pay grade and allege that male Employment Opportunity Specialists in the Chicago offices of the Office of Federal Contract Compliance Programs are being compensated at the GS–12 and GS–13 pay grades, thereby discriminating against the plaintiffs on the basis of sex in violation of the Equal Pay Act of 1963. 29 U.S.C. § 206(d)(1) (1982). Plaintiffs are seeking recovery of back pay, liquidated damages, and compensation for the loss of any seniority which would have accrued to them had they been granted their promotion to the next higher pay grade.

Defendant contends that plaintiffs have failed to establish a prima facie case. Defendant further contends that even if plaintiffs have established a prima facie case, any wage disparities that exist are the arbitrary results of the implementation of a bona fide gender-neutral job classification system, which falls under statutory excep-

---

**1.** Plaintiffs' sex discrimination claims under 29 U.S.C. § 206(d)(1) of the Equal Pay Act are distinguishable from Court of Claims cases dismissing discrimination claims for lack of jurisdiction under Section 717 of the Equal Employment Act of 1972 (Title VII of the Civil Rights Act), 42 U.S.C. § 2000e (1982).

tion (iv) of the Equal Pay Act: "A differential based upon any other factor other than sex." 29 U.S.C. § 206(d)(1)(iv) (1982).

After a careful examination of the facts and pleadings, the court concludes that plaintiffs are entitled to back pay and retroactive promotion, but not to liquidated damages.

## FACTS

Plaintiff, Ms. Rhonnie J. Molden, was employed in the Chicago Office of the Department of Labor, Office of Federal Contract Compliance Programs (OFCCP) from October, 1978 to April, 1984. She worked in OFCCP as an Employment Opportunity Specialist, her job function being to ensure that government contractors adhered to equal employment opportunity guidelines. At the time that Ms. Molden took the position, the career ladder was determined under the GS–160 job classification standard. The upper level career track was the GS–12 pay grade. Ms. Molden performed her job duties competently and she was steadily promoted along the GS–160 career track in the expectation that she would eventually be promoted to the GS–12 level.

In June 1980, Ms. Molden was promoted to the GS–11 grade. Promotion to the GS–12 grade was appropriate in June 1981, after she had served one year in grade and had demonstrated to her supervisors that she was capable of performing competently at the next higher level. She was recommended for promotion by her immediate supervisor but such promotion was denied, as it was again denied in January 1983, despite the fact that she received a highly effective performance rating in November 1982. She also received a "Sustained Superior Achievement" award from the Department of Labor. Defendant indicated to her that the reason she was not promoted in June 1981 to the next higher grade was that the Department was in the process of implementing a new Employment Opportunity Specialist personnel standard (GS–360) and had discovered serious problems of overgrading. Therefore, all promotions to the GS–12 grade were frozen. The freeze

was to remain in effect until such time as the GS–360 job classification standard could be implemented and the overgrading problem corrected. The court notes, however, that in the fall of 1981, three male Equal Employment Opportunity Specialist co-workers of Mesdames Molden and Roderick were promoted to the GS–12 level.

As with Ms. Molden, Ms. Roderick has at all times relevant to this cause of action, been employed in one of the Chicago offices of the Office of Federal Contract Compliance Programs. It is uncontroverted that she has also competently performed her job duties; she has been steadily promoted and often commended for the quality of her work. She was promoted to the GS–11 pay grade in March of 1981, and first became eligible under the GS–160 standard for promotion to the GS–12 level in March 1982, after one year in grade. She was recommended for promotion by her supervisors, but, like Ms. Molden, her promotion was denied on the basis that there was a freeze on promotions until such time as the new GS–360 job classification standards implemented and the overgrading problem could be remedied.

In November 1980, the Office of Personnel Management published the Equal Opportunity Compliance Series GS–360 position classification standards. These new standards were phased in throughout the next 12 months and were scheduled to be implemented by the Department of Labor in October 1981. The GS–360 standard was to be applied to all Employment Opportunity Specialists employed in the OFCCP who had previously been classified under the GS–160 series.

Due to the large number of positions that were going to be affected by the new standard, the Director of Personnel Management decided to conduct an initial ten percent random test sample of GS–12 level and above nonsupervisory positions in the OFCCP Area Offices to which the new standards would apply. While this test sample was being conducted, the Director of OFCCP also issued an initial action plan that called for the implementation of the

new GS–360 standards between April 1 and September 30, 1982.

Between December 1981 and August 1982, the freeze on hiring and promotions was in effect, as well as a reduction in force, to eliminate 300 positions. During that period, management received the findings of the initial ten percent random sample of the GS–12 and above non-supervisory positions in the OFCCP. The sample indicated that approximately 48 percent of these positions were overgraded.

Problems encountered in the original implementation plan of the GS–360 standards, which was to have been completed in September 1982, led the Director of Personnel Management to hold a conference in Washington, D.C., for all classifiers in the Department of Labor. The conference attempted to clarify the manner in which the new standards should be applied, and to correct the failed implementation plan of the GS–360 standard.

In November 1982 the Director of Personnel Management issued a "Supplemental Guide to Classification Standards" addressing the GS–360 standards. The supplemental guide attempted to further clarify how to properly distinguish between GS–11 and GS–12 level employees. This further clarification by the Director of Personnel Management also failed to remedy the problems encountered in implementing the new standard. From the date of issuance of the guide in November 1982 to March 1983, additional problems arose in the implementation of the new standard, which further delayed the process and prevented either the removal of the freeze on promotions or the correction of the overgrading problem.

From March 1983 to August 1983, the Director of Personnel Management formulated a new plan for implementing the GS–360 standards. The new plan provided additional classification guidance and directions to the Regional Personnel Offices to conduct sample on-site desk audits between November 1983 and March 1984. It further required a review of Employment Opportunity Specialist positions at the GS–12 level or above. In addition, the new implementation plan required the OFCCP to realign certain area offices to improve work distribution efficiency and to institute a computerized system to help identify the more complex cases so that they could be assigned to the GS–12 employees. However, this new plan also failed to remedy either the problems encountered in the implementation of the new standard or the overgrading problems.

Further studies conducted by the Director of Personnel Management showed that a serious overgrading problem continued to exist. In March 1984, the Director asserted that the problem was no longer associated with the individual classification of specific factors of the GS–360 standard. Rather, he felt that the problem was the result of a "serious position management problem" that could cause a potential downgrading of over 80 percent of the existing GS–12 positions. This finding resulted in the development of yet another implementation plan.

This third implementation plan shifted from a review of individual positions to a broader management perspective, which attempted to consolidate the existing GS–12 work into fewer positions by reassigning some GS–12 level employees and making other organizational changes. It was thought that under the new plan, with the aid of attrition, the overgrading problem could be cured. This plan was completed and submitted to the Undersecretary of Labor in April of 1985. Within this plan, management also included a new standard position description for the Employment Opportunity Specialists employed at the GS–12 level in an attempt to further clarify the differences between the GS–12 and the GS–11 positions. The new plan contained additional guidelines on the interpretation and application of the GS–360 standard to be used in the new implementation plan. Defendant reports that this implementation plan was submitted to the Office of Personnel Management in April 1985 and was subsequently approved with the requirement that implementation be completed by

June 1986, at which time the overgraded employees would be downgraded to the GS–11 level.

## DISCUSSION

The Equal Pay Act of 1963 [2] was passed to remedy what was perceived to be a serious and endemic problem of employment discrimination both in private industry and, later, the government. The Equal Pay Act was enacted in 1963 as an amendment to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and extended to the federal government in 1974. 29 U.S.C. § 203(e)(2).[3] It sought to overcome the age-old belief in the inferiority of women and to eliminate the economic and social consequences which flow from it. *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir.1970).

"The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning Glass Works v. Brennan*, 417 U.S. 188, 208, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1 (1974). The Supreme Court addressed the interpretation and application of such remedial statutes in *Tennessee Coal, Iron & R.R. v. Muscoda Local 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944). In *Tennessee Coal*, the court stated:

> [T]hese provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom

and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Id.* at 597, 64 S.Ct. at 702.

The Supreme Court in *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945), has also stated:

> The Fair Labor Standards Act was designed "to extend the frontiers of social progress" by "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." Message of the President to Congress, May 24, 1934. Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to [acts] other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.

*Id.* at 493, 65 S.Ct. at 808.

This language, while addressing the Fair Labor Standards Act as it existed in 1945, has subsequently been applied to the Act as amended to incorporate the Equal Pay Act of 1963. *See Brennan v. Goose Creek Consolidated Independent School District*, 519 F.2d 53, 57 (5th Cir.1975). It is within this framework of general cannons of statutory construction that the present case must be addressed.

---

**2.** The pertinent part of 29 U.S.C. § 206 states the following:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a se-

niority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (1982).

**3.** Reference to the Fair Labor Standards Act is synonymous with the Equal Pay Act for the purposes of this Opinion.

### A. Elements of a Prima Facie Case for Violation of the Equal Pay Act.

Defendant contends that plaintiffs have failed to establish a prima facie case under 29 U.S.C. § 206(d)(1) of the Equal Pay Act. Defendant bases its contention on three factors: 1) that plaintiffs have failed to show that the wage disparities were the result of sex discriminatory practices; 2) that plaintiffs have failed to show that under defendant's job classification standard, women have been disproportionately affected; and 3) that for purposes of the Equal Pay Act, as applied to cases involving the federal government, the term "establishment" should be interpreted to mean the civil service as a whole and not a specific geographic location.

 To establish a prima facie case under the Act a plaintiff has the burden of proving that work has been performed similar to that performed by employees of the opposite sex involving equal skill, effort, and responsibility, that the work was performed under similar working conditions and that the employer paid different wages to employees of opposite sexes for such work. *Corning Glass Works v. Brennan,* 417 U.S. at 195, 94 S.Ct. at 2228; *E.E.O.C. v. Maricopa County Community College Dist.,* 736 F.2d 510, 513 (9th Cir.1984). The jobs need not be identical to be substantially equal, but the jobs must require similar skills, effort, and responsibilities under similar working conditions. *Shultz v. Wheaton Glass Co.,* 421 F.2d at 265; *see also Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979). Minor differences in job duties are not sufficient to avoid the application of the Act. *Corning Glass Works v. Brennan,* 417 U.S. at 203 n. 24, 94 S.Ct. at 2232 n. 24.

### 1. Discriminatory Intent

 Defendant contends that an element of establishing a prima facie case is that the wage disparities of an Equal Pay Act violation must be based on sex discrimination. This contention is not supported by the language of the Act or from judicial interpretations of the law. The United States Court of Appeals for the Fifth Circuit in *Hodgson v. American Bank of Commerce,* 447 F.2d 416 (5th Cir.1971), faced with the question of whether the plaintiff had to show that the wage disparity was sex based, held that the plaintiff had no such burden. *Id.* at 420. Defendant argued that in *Hodgson v. Corning Glass Works,* 474 F.2d 226 (2d Cir.1973), aff'd, *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), the court implied that sexual bias must be shown. 474 F.2d at 231. However, *Hodgson* is based on *Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3rd Cir.1970), and that the court in *Shultz* found that the burden of proving sexual bias was met solely by showing the existence of a wage differential between male and female employees doing equal work. *Id.*

Defendant further contends that since the Equal Pay Act and the Civil Rights Act are *in pari materia,* a plaintiff asserting a case under the Equal Pay Act must show that there was some discriminatory criterion, illegal under Title VII of the Civil Rights Act, to establish a prima facie case under the Equal Pay Act. To hold to this view is to distort the meaning of the term *in pari materia.* Statutes that are *in pari materia* are those that relate to the same thing, so as to be construed together. Black's Law Dictionary 711 (5th ed. 1979). The courts, by using the term *in pari materia* to relate the Equal Pay Act with the Civil Rights Act, may not interpret this phrase in such a manner that it destroys the underlying purpose of the other act. *Shultz v. Wheaton Glass Co.,* 421 F.2d at 266. To say, as defendant contends, that we can impose an additional burden of proof upon a plaintiff who asserts a cause under the Equal Pay Act since the acts are *in pari materia* would undermine the intent of the Act and frustrate its purpose. A plaintiff, in asserting an equal pay violation, need not show that a disparity in wages is the result of a discriminatory practice on the part of the employer. Rather, this court finds that to establish a prima facie case, it is merely necessary that the

plaintiff show that an employer paid different wages to employees of the opposite sex for substantially equal work.

### 2. *Discriminatory Effect*

■ Defendant further asserts that plaintiffs have failed to show that women were disproportionately affected by the implementation of the government's job classification program, and thus, the plaintiffs have failed to establish a prima facie case since sex discrimination cannot be properly inferred from the facts. Although the facts in the case at bar indicate that the implementation process, when viewed on a nationwide basis, did not disproportionately affect either sex, they do indicate that in the two Chicago offices of the Office of Federal Contract Compliance Programs, plaintiffs were affected in a discriminatory manner. In the Chicago offices, plaintiffs were the only Employment Opportunity Specialists being compensated at the GS–11 grade except for one male employee who had serious performance problems. All the other Employment Opportunity Specialists in their offices were males being compensated at a GS–12 or GS–13 level. Plaintiffs were indisputably performing their work in a competent manner, but were denied promotion to the next pay grade due to the freeze on promotions required under the GS–360 implementation program. Thus, they were denied compensation equal to that of their male co-workers for the performance of equal jobs.

### 3. *The Meaning and Effect of the Term, "Establishment."*

■ The court in *Grumbine v. United States*, 586 F.Supp. 1144 (D.D.C.1984), finding an equal pay violation, held that for purposes of public employment, an "estab-

lishment," as that term is used in the Equal Pay Act, is not automatically determined by geographic location, but depends upon the degree to which the particular government entity has centralized its personnel administration, *Id.* at 1148, and that for government employment purposes in actions under the Equal Pay Act, the "establishment" was the civil service system in its entirety.[4] *Id.* at 1150. *Grumbine*'s use of the entire civil service system as the appropriate "establishment" is easily distinguishable from the case at bar because in *Grumbine,* "there was no one in the Baltimore 'establishment' who had a position like plaintiff's—she was the one and only...." *Id.* at 1147. The *Grumbine* court was required to reach out to other areas in order to find employees with comparable skill, effort and responsibility under similar working conditions. Accordingly, *Grumbine* adopted an evaluation on a nationwide basis in order to give effect to the legislative purpose of providing equal pay for equal work. In contrast, defendant has acknowledged in the case at bar that plaintiffs have demonstrated equal skill, effort, and responsibility with other employees in the two Chicago offices. Thus, there is no need to expand the definition of an "establishment" to include the Civil Service in its entirety as in *Grumbine*.[5] Although on a nationwide basis an essentially equal number of employees of both sexes were affected by the implementation program, the program, as it affected the Chicago offices of the Office of Federal Contract Compliance Programs, resulted in wage disparities between the sexes for the performance of similar work under similar working conditions. The plaintiffs, have established their prima facie case.

---

**4.** The court notes that the definition of the word establishment, as that term is used in the Act, is not material to the making of a prima facie case. Rather, as stated previously, this court would adhere to the decision of the Supreme Court in *Corning Glass Works* and the decision of the Ninth Circuit in *Maricopa County,* that plaintiffs, in order to establish a prima facie case, need merely show that an employer is paying different wages to employees of the op-

posite sex for the performance of similar work under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. at 195, 94 S.Ct. at 2228; *Maricopa County,* 736 F.2d at 513.

**5.** Any cause of action asserted under the Equal Pay Act must be looked at on a case by case basis. *Hodgson v. Brookhaven General Hospital,* 470 F.2d 729, 730 (5th Cir.1972).

B. *Affirmative Defense to a Prima Facie Case for Violation of the Equal Pay Act.*

██ Once a prima facie case has been established, the burden of proof shifts to the defendant to show that the wage disparities fall under one of the four exceptions to the Act. In the present case, defendant pled to exception (iv) of the Equal Pay Act. Defendant asserted that this exception was sufficiently broad to include the implementation of their job classification standard and the overgrading problems that they encountered. They rely on the courts statement in *Kouba v. Allstate Insurance Co.*, 691 F.2d 873, 877 (9th Cir. 1982), that exception (iv) is a "broad general exception." Defendant further relied on the legislative history of exception (iv), which states: "A primary purpose in adding this and other exceptions was to permit employers to utilize bona fide gender-neutral job classification systems." H.R.Rep. No. 309, 88th Cong., 1st Sess. 3, *reprinted in* 1963 U.S.Code Cong. & Admin.News 687, 689. Defendant contended that the current overgrading and subsequent reclassification system as applied to plaintiffs was gender-neutral in both purpose and effect. There was absolutely no evidence that the female Employment Opportunity Specialists of the OFCCP are treated in any way differently from the male Employment Opportunity Specialists, and that if there were wage discrepancies, they are caused by factors other than sex.

Defendant has a highly complex job classification system that is based upon duties, responsibilities, merit, and seniority. Due to the large number of persons involved and the complexity of the reclassification system, there continues to be an ongoing process of educating classifiers in the area, regional, and National Office regarding the new standard to ensure consistency in application. The new standard for classifying GS–12 and GS–13 pay grades was promulgated in November of 1980 and defendant has been in the process of implementing the new GS–360 standard since then.

██ To be a bona fide job classification system, the system must be gender-neutral in its application. In *Cayce v. Adams*, 439 F.Supp. 606 (D.D.C.1977), a female at the GS–8 level was doing work equal to that performed by a GS–11 male. Her supervisor attempted to promote her to the GS–11 grade but was not successful because classification officials audited the job and concluded that the work duties justified a GS–8 pay level. As in the present case, defendant asserted that the pay discrepancy between the female and male employees was excused under exception (iv) of the Equal Pay Act as being the result of a factor other than sex. The factor upon which the defendant relied was the application of a classification system in a gender-neutral manner that arbitrarily allowed wage disparities to continue. However, the court in *Cayce* went on to hold that, although disparities in pay caused by imperfections in the system did not by themselves deny the classification system its bona fide status, such status is denied where the wage disparities are known to the responsible officials and they fail to remedy the situation. 439 F.Supp. at 609. The *Cayce* court further stated:

There was a knowing failure to pursue a classification investigation designed to put male and female employees doing "equal work" on an equal footing consistent with classification standards. The differential was sex-based as a matter of law and fact. Thus the classification system, as applied, was not bona fide.

In this instance neither the classifiers nor [the supervisor] were shown to have had any bias against females. Nonetheless the discrepancy was knowingly permitted. Since it differentiated between a lower paid woman and a higher paid man doing "equal work" and was shown to be sex based, recovery under the Equal Pay Act must be granted....

*Id.* at 609.

██ In the case at bar, the classification system as it was designed may be gender-neutral, but the manner in which it has affected the plaintiffs in the Chicago

offices has not been gender-neutral. The responsible officials knew of the disparity in pay and have attempted to remedy the situation by an ongoing process of implementing a reclassification program which would equalize the wages between the employees that were performing equal work. However, implementation of the new GS–360 standard has not resulted in the achievement of this goal. It was the responsible official's inability to correct the wage discrepancies in a timely manner that removed defendant's job classification from it's otherwise bona fide status, and gave rise to the violation of the Equal Pay Act. The existence of the wage disparities, along with the fact that the disparities were known to the responsible officials, and the fact that the discrepancies have not been remedied, removes the bona fide status from the defendant's job classification system. Therefore, defendant's implementation of the job classification standard cannot fall under exception (iv) of the Equal Pay Act.

In *E.E.O.C. v. Maricopa County Community College District*, 736 F.2d 510 (9th Cir.1984), defendant has a reasonable time in which to remedy wage discrepancies. *Id.* at 515. In *Maricopa County*, the E.E.O.C. brought suit on behalf of a female loan clerk who gradually took on greater duties until she was doing work that would place her in the higher paid category of financial aid assistant. She sought promotion but was not reclassified for almost two years. The defendant argued that a factor other than sex accounted for the wage disparity because its job classification system and a freeze on position reevaluations produced the wage disparity and that the female clerk was "simply caught in a period of bureaucratic delay which had no invidious purpose." *Id.* at 514. The court acknowledged that an employer could not be expected to effect an immediate reclassification, but that it must be allowed a reasonable time to evaluate the position and the employee to see if the reclassification is warranted. The court concluded that the employer was required to act within a reasonable time when it became aware that the employee was performing work equivalent to male counterparts. *Id.* With respect to the employee's actions within a reasonable time, the court stated the following:

> Instead of requiring [the employee] to work within her student loan clerk classification, [the employer] permitted her to continue working in the equivalent of the financial aid assistant position for almost *two years* before taking any action. And, when it did reclassify her, it did not give her back pay or retroactive seniority.

*Maricopa County,* 736 F.2d at 515 (emphasis added).

In view of *Maricopa County*'s finding that two years was too long to reclassify, give back pay, and retroactive seniority to an employee, five years of administrative efforts to rectify seven years of wage discrimination in the present case is deemed an unreasonable amount of time. By utilizing the plaintiffs to do the work which their co-workers at the GS–12 level were doing, the defendant benefits from the acquired knowledge and expertise of the plaintiffs while not fairly compensating them at a level equal to that of their male co-workers. This amounts to a violation of the Equal Pay Act.

## CONCLUSION

For the reasons discussed the court is of the opinion that plaintiffs presented a prima facie case of a violation of the Equal Pay Act as to themselves and that defendant failed to rebut plaintiffs' case. The court does not find that defendant failed to act in good faith. Defendant knew of the problem nationwide and attempted over the years to correct it on a nationwide basis. *See Clymore v. Far-Mar-Co.,* 709 F.2d 499, 505 (8th Cir.1983). What defendant failed to see was the inequitable treatment of plaintiffs at the Chicago offices of OFCCP and to take steps to correct the specific acts of discrimination within any reasonable period of time.

Accordingly, plaintiffs' and defendant's Motions for Summary Judgment are granted in part and denied in part. Plaintiffs are entitled to retroactive promotion to the time they would normally have been promoted but for defendant's violation of the Equal Pay Act, retroactive seniority and appropriate back pay. Liquidated damages are denied on the basis that defendant did act in good faith predicated upon a reasonable belief that it was in compliance with the Equal Pay Act. *Nitterright v. Claytor,* 454 F.Supp. 130, 140 (D.D.C.1978). The parties are directed to file a stipulation for entry of judgment within 45 days, indicating the computation of back pay with notice that the necessary entries have been made in plaintiffs' official personnel files reflecting the findings and conclusion of the court.