**Georgia GIRDIS, et al., Plaintiffs,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Defendant.**

**Civ. A. No. 84–951–WF.**

United States District Court,
D. Massachusetts.

Aug. 14, 1987.

Richard F. Landrigan, Costello & Landrigan, Somerville, Mass., for plaintiffs.

Justine S. Lisser, Nelda I. Aponte, Anthony J. DeMarco, Office of the General Counsel, E.E.O.C., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiffs Georgia Girdis, Carolyn Hamilton, Barbara Meunier, and Joan Van Dorn, present or former employees of the Equal Employment Opportunity Commission ("EEOC"), have brought this action against defendant EEOC under the Equal Pay Act, 29 U.S.C. § 206(d)(1). Plaintiffs allege that

the EEOC discriminated against them in violation of the Equal Pay Act in January 1981 by hiring the four of them, all females, at a substantially lower salary than the salary at which the EEOC hired Douglas Sweet, a blind male, at that same time to do the same job. Plaintiffs seek back wages, interest, and liquidated damages. The case was tried to the court.

For the reasons discussed below, the court finds that the EEOC did not violate the Equal Pay Act by paying the plaintiffs a lower salary than it paid to Mr. Sweet. More specifically, although plaintiffs did establish a *prima facie* violation of the Equal Pay Act, the court finds that the wage differential was caused solely by the good faith application of *bona fide*, gender-neutral, acceptable federal personnel laws and policies. Thus, this wage differential is based upon "a factor other than sex," one of the statutory exceptions created by the Equal Pay Act.

## I. *Findings of Fact*

Based on stipulations of fact submitted by the parties, and on the evidence presented at trial in the form of exhibits and witness testimony, the court hereby finds the following facts to be proven by a preponderance of the evidence.

On January 16, 1981 the Boston office of the EEOC had several vacancies for Equal Opportunity Specialists ("EOS"), who, among other things, handle Equal Pay Act complaints. The vacancies had existed for some time because of a hiring freeze which recently had been lifted. That freeze was expected to be reinstituted on January 20, 1981, upon the inauguration of a new President, Ronald Reagan. The EEOC decided to escape the consequences of the anticipated new freeze by immediately filling the Boston EOS vacancies.

Under the federal Civil Service System, the EOS vacancies were Merit Promotion Vacancies. Therefore, only persons already employed by the federal government or who otherwise had competitive status were eligible to be hired, absent an applicable exception.

■ One exception established by law permitted the employment of qualified handicapped individuals who did not have competitive status, under Schedule A, the excepted service provision. Plaintiffs do not dispute the propriety of this exception, pursuant to which Mr. Sweet, a blind man, was eligible to be hired by the EEOC although he was not already employed by the federal government and did not otherwise have competitive status. The court agrees that making the handicapped eligible for federal appointments under the excepted service provision of the Civil Service laws is a *bona fide*, gender-neutral, acceptable personnel policy.

Federal positions and employees are each given a GS-grade. In January 1981, there was a range of grades at which an EOS could be hired by the EEOC. On paper, the qualifications and responsibilities of EOS's at different grades varied. Although there was overlap in the salary ranges which could be paid within grades which were close to each other, generally employment at a higher grade would result in employment at higher pay.

Under the Federal Personnel System, in order to be employed at a particular grade, an individual must be *both* "qualified" and "eligible" for appointment to that grade. Factors considered with regard to qualifications include education and experience. There are Federal employment laws, policies, and practices, however, which may operate to make an applicant ineligible to obtain a grade for which he or she may be qualified. Among these provisions are federal time-in-grade restrictions.

Federal personnel law and policies include "time-in-grade restrictions" designed to prevent promotions at too rapid a pace. Federal Personnel Manual, § 6–1(a) (1982). In 1981, the time-in-grade restrictions required a federal employee to serve a minimum of one year in a grade before becoming eligible to be promoted to the next higher GS grade. 5 C.F.R. § 300.602. These restrictions applied in spite of an employee's merit-related qualifications and were applicable both to promotion within the same agency and to transfers within

the competitive service in the executive branch. 5 C.F.R. § 300.601(a).[1] The federal time-in-grade restrictions were a *bona fide*, gender-neutral, acceptable personnel policy.

The time-in-grade restrictions did not in 1981 apply to new entrants to the federal employment system. An individual newly hired by the federal government could be hired at any grade for which he or she was qualified.

On January 16, 1981 plaintiffs and Mr. Sweet were offered and accepted EOS positions in the Boston office of the EEOC. They were hired as the result of an effort by the EEOC to fill the Boston EOS vacancies that day, at the lowest grades possible. Plaintiffs, who are women, were each hired as GS-5s. Sweet, a male, was hired as a GS-9. Sweet was given a higher starting salary than plaintiffs.

Prior to being hired by the EEOC, plaintiff Georgia Girdis was a GS-5 Accounting Technician and Equal Opportunity counselor with the United States Coast Guard. On her application for the EOS position, Girdis stated that the lowest grade she would accept was a GS-5.

Plaintiff Joan Van Dorn was a GS-5 Executive Assistant with the United States Department of the Interior before she was hired by the EEOC. On her application, Van Dorn said that she would accept employment as a GS-7 or 9. When offered the EOS position, however, Van Dorn was told that because of the federal time-in-grade restrictions she was only eligible to be appointed as a GS-5. After discussions with several EEOC officials, Van Dorn accepted appointment as a GS-5.

The parties stipulated that at the time Girdis and Van Dorn were hired, they were not eligible for employment above the GS-5 level, because of the time-in-grade restriction which required a federal employee to serve a minimum of one year in a grade before becoming eligible to be promoted to the next higher GS grade. The parties also stipulated that the EEOC in good faith followed all applicable Office of Personnel Management and EEOC directives in grading Girdis and Van Dorn as GS-5s at the time they were hired. Because the time-in-grade restriction made Girdis and Van Dorn ineligible for employment at higher than a GS-5, the EEOC did not evaluate whether they were qualified for employment above that grade prior to their hiring.

Plaintiff Barbara Meunier was a GS-4 Group Clerk/Secretary with the United States Internal Revenue Service before being hired by the EEOC. Meunier stated on her application that she would accept appointment as a GS-5, 7, or 9. Because of education, experience, and previous employment in the federal government as a GS-6 (in the late 1960's), Meunier was qualified for appointment as a GS-7. She was not ineligible for appointment as a GS-7 by virtue of the time-in-grade restrictions applicable to all federal agencies. However, the New York District Office of the EEOC, of which the Boston Area Office was a branch, had a strict policy of not promoting persons more than two grades at a time, again because of the desire to prevent excessively rapid promotions. This policy had been followed by the New York District Office for at least thirteen years. For Meunier to have been hired as a GS-7 would have constituted an increase of three grades at once. Because EOS's are not employed at the GS-6 level, in order to remain consistent with its policy of not promoting employees more than two grades at once, the EEOC hired Meunier as a GS-5. This action represented a good faith application of a *bona fide*, gender-neutral, acceptable personnel policy.

Plaintiff Carolyn Hamilton was a GS-6 Clerk/Typist with the EEOC before she was employed as an EOS. Hamilton stated on her application that she would accept

---

1. A waiver of a time-in-grade restriction could have been granted by the Office of Personnel Management ("OPM") upon request by an agency under certain conditions, *e.g.*, when the employee is within reach of a register for competitive appointment to the position to be filled, or in order "to avoid undue hardship or inequity, in an individual case of meritorious nature." 5 C.F.R. § 300.603(a)(4). Plaintiffs did not ask for, and the defendant did not request, a waiver when plaintiffs were hired.

appointment as a GS–5 or 7. She was initially found by the EEOC to be unqualified for a GS–5 EOS position. Hamilton's supervisor, however, persuaded the EEOC that Hamilton did have the requisite experience to be a GS–5 EOS. Hamilton's initial rating as a GS–5 resulted from the good faith application of *bona fide*, gender-neutral, acceptable personnel policies.

Mr. Sweet, who had a Ph.D in American History and had held a variety of jobs, was unemployed immediately before being hired by the EEOC. In applying for an EOS position, Sweet correctly represented that because he was blind he was eligible for a Schedule A appointment and wished to be considered under the Selective Placement Program for the handicapped. As he was not a federal employee subject to time-in-grade restrictions, Sweet was eligible to be hired at the highest level for which he was qualified. The EEOC properly determined that Sweet was qualified for appointment as a GS–7 or as a GS–9.

On the morning of January 16, 1981, Sweet was offered employment by the EEOC as a GS–7. He insisted, however, that he would only accept appointment as a GS–9. After discussions between officials of the EEOC on the afternoon of January 16, 1981 the EEOC agreed to appoint Sweet as a GS–9. As the parties stipulated, the EEOC's decision to agree to Sweet's demands was motivated by, among other things, its desire to fill the EOS vacancies that day. As the parties also stipulated, another factor, but not the overriding factor, in the agency's decision was its desire to hire a handicapped individual to improve its affirmative action profile.

Sex was not a consideration in the decisions to hire plaintiffs as GS–5s and Mr. Sweet as a more highly paid GS–9. Rather, the appointments and related pay differentials were solely the result of the application of *bona fide*, gender-neutral, acceptable federal personnel laws and policies. The EEOC acted in good faith in applying those laws and policies in the context of this case. Reliance upon them was not a pretext for discrimination based upon sex. To the contrary, the results would have been the same if Sweet had been a female and plaintiffs had been males.

Although the written descriptions of their initial duties as EOS's differed, the parties stipulated that plaintiffs and Sweet initially performed jobs which were equal in terms of effort, responsibility and working conditions. In addition, plaintiffs proved that the jobs at issue also required the same level of skill.

Sweet went on to win merit awards from the EEOC and to perform at a higher level of skill and productivity than at least some of the plaintiffs. Plaintiffs were promoted by the EEOC at varying rates, reflecting good faith evaluations of their performance. Sex was not a consideration in the decisions concerning their advancement.

## II. *Conclusions of Law*

Plaintiffs have alleged that defendant EEOC violated the Equal Pay Act, 29 U.S. C. § 206(d)(1), when it paid the plaintiffs, four females, all at a lower rate of pay than it paid Douglas Sweet, a male, at the same time to do the same work. Defendant claims that the discrepancy in pay was the result not of sex discrimination, but of a factor other than sex, namely, the good faith operations of *bona fide*, gender-neutral acceptable federal personnel laws and policies.

### 1. *Prima Facie Violation of the Equal Pay Act*

The Equal Pay Act provides the following:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system;

(iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

■ In order to prove a violation of the Equal Pay Act, a plaintiff has the burden of making a *prima facie* showing that the employer has paid different wages to employees of one sex than the other for equivalent work. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, (1974). This burden requires that the plaintiff show by a preponderance of the evidence that the jobs of the disparately paid employees are equal in skill, effort, responsibility, and working conditions. *Id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that the pay differential is justified under one of the Act's four exceptions. *Id.* at 196, 94 S.Ct. at 2229.

As stated in the Findings of Fact, the parties stipulated that plaintiffs' and Mr. Sweet's initial jobs were equal in effort, responsibility, and working conditions and plaintiffs proved that the jobs at issue also required the same level of skill. Thus, plaintiffs established a *prima facie* case.

### 2. *Defenses to a Prima Facie Case*

As indicated above, once a plaintiff has proven a *prima facie* violation of the Equal Pay Act, the burden shifts to the defendant to prove by a preponderance of the evidence the applicability of any of the four exceptions to the Act. *Id.* The act creates exceptions for wage differentials based on: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other

than sex...." 29 U.S.C. § 206(d)(1). Defendant in this case argues that even if plaintiffs have established a *prima facie* violation, the pay differential between Mr. Sweet and the four plaintiffs is justified by a factor other than sex, namely, defendant's good faith application of *bona fide,* gender-neutral acceptable federal personnel laws and policies.[2] Plaintiffs dispute this contention.

For the reasons explained below, the court finds that the pay differential at issue in this case was caused by defendant's proper application of *bona fide,* gender-neutral, acceptable personnel laws and policies, which constitute a factor other than sex.

### 3. *Bona Fide, Gender–Neutral, Acceptable Personnel Policies Are A Factor Other Than Sex*

"The Equal Pay Act was designed to eliminate wage differentials based on sex." 29 C.F.R. § 1620.13(d). The fourth exception in the Act, by its express terms, permits "a differential based on *any* other factor other than sex." 29 U.S.C. § 206(d)(1) (emphasis added); *see Hodgson v. Robert Hall Clothes, Inc.,* 473 F.2d 589, 594 (3rd Cir.1973).

"While a concern about job evaluation systems served as the impetus for creating the [fourth] exception, Congress did not limit the exception to that concern." *Kouba v. Allstate Insurance Co.,* 691 F.2d 873, 877 (9th Cir.1982); *see also Hodgson,* 473 F.2d at 594; *Goodrich v. IBEW,* 40 F.E.P. 303, 309 (D.D.C.1985) [available on WESTLAW, 1985 WL 5992]. Similarly, a personnel system need not satisfy the merit system exception of the Equal Pay Act to satisfy the factor other than sex exception. *Maxwell v. City of Tucson,* 803 F.2d 444, 447 (9th Cir.1986).

Rather, as the Supreme Court has noted, the legislative history of the Equal Pay Act

---

**2.** Defendant also argues: (1) that defendant's consideration of Mr. Sweet's handicap in offering him a GS–9 constituted a factor other than sex; and (2) that the federal personnel system is a *bona fide* merit system. Because this court finds that defendant's conduct was determined

by its proper reliance on permissible federal personnel laws and policies, which the court finds is a factor other than sex, the court need not and does not decide the merit of the EEOC's other contentions.

indicates that the fourth affirmative defense is a " 'broad principle' which makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate the legislation. 109 Cong.Rec. 9203 (1963)." *County of Washington v. Gunther*, 452 U.S. 161, 171 n. 11, 101 S.Ct. 2242, 2248 n. 11, 68 L.Ed.2d 751 (1981) (quoting Representative Griffin). Thus, many courts have characterized the exemption for pay differentials based on any factor other than sex as a "broad general exception." *Kouba*, 691 F.2d at 877 (quoting H.R.Rep. No. 309, 88th Cong., 1st Sess. 3, reprinted in 1963 U.S.Code Cong. & Ad.News 687, 689); *Maxwell*, 803 F.2d at 447 (9th Cir.1986); *EEOC v. Maricopa County Community College District*, 736 F.2d 510, 514 (9th Cir.1984); *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1261 (7th Cir.1985); *see also Hodgson*, 473 F.2d at 596.

■ The Equal Pay Act does not authorize a court to substitute its judgment for the judgment of an employer with regard to a *bona fide* personnel program, so long as it does not discriminate on the basis of sex. *County of Washington*, 452 U.S. at 171, 101 S.Ct. at 2249; *Kouba*, 691 F.2d at 876; *Maxwell*, 803 F.2d at 447; *Maricopa*, 736 F.2d at 514; *Goodrich*, 40 F.E.P. at 309. Accordingly, "a factor used to effectuate some business policy is not prohibited simply because a wage differential results." *Kouba*, 691 F.2d at 876. An employer cannot, however, use a factor which causes a wage differential between male and female employees without an acceptable business reason. *Id.*

■ Moreover, an employer may not use a purported business reason as a pretext to discriminate against women. *Id., Maxwell* 803 F.2d at 446. Thus:

[A]lthough discriminatory intent is not part of the employee's *prima facie* burden under the Equal Pay Act, an employee may rebut the employee's affirmative defenses with evidence that the employer intended to discriminate, and that the affirmative defense claimed is merely a pretext for discrimination. [Citations omitted]. The appropriate inquiry to de-

termine if the factor put forward is a pretext is whether the employer has "used the factor reasonably" in light of the employer's stated purpose as well as its other practices. *Kouba*, 691 F.2d at 876–77.

*Maxwell*, 803 F.2d at 446.

■ Application of the foregoing principles to this case persuades the court that the defendant has proven that the differences in pay between plaintiffs and Mr. Sweet when they were hired by the EEOC were attributable to a factor other than sex and, therefore, permissible. As described in the Findings of Fact, the federal laws and policies which caused Mr. Sweet to be eligible for appointment as a GS-9 and plaintiffs to be eligible for appointment as GS-5s were each *bona fide*, gender-neutral personnel policies.

As indicated earlier, courts are obliged to defer to an employers' good faith business judgment concerning a personnel program, as long as it does not discriminate on the basis of sex. It is particularly appropriate that the court exhibit such deference in this case, where the personnel program at issue implements policies established by Congress and the President, the institutions which also enacted the Equal Pay Act.

It was the good faith operation of *bona fide*, gender-neutral, acceptable government employment programs which resulted in Mr. Sweet, as a new employee, being eligible to be hired as a GS-9 when plaintiffs, as existing employees, were not eligible for appointment at that level. The EEOC's actions were reasonable and applied consistently with the purposes of the employment programs and practices involved. The EEOC's reliance on those programs and practices was not a pretext for discrimination based on sex. Sex was not in any fashion a consideration influencing the grades at which Mr. Sweet and plaintiffs were hired. The results would have been the same if Sweet were a female and plaintiffs were males. Accordingly, the initial pay differential between Mr. Sweet and plaintiffs was permissible because it was based on a factor other than sex.

The Court of Appeals for the Fourth Circuit came to a similar conclusion in *Equal Employment Opportunity Commission v. Aetna Insurance Co.*, 616 F.2d 719 (4th Cir.1980). In *Aetna* the salaries of existing employees were governed by a different, less flexible system than the salaries for new employees. This dual salary system resulted in a female, existing employee being paid less than a newly hired male employee performing the same job. The court found that the salary differential fell into the "factor other than sex" exception, because "the differential was attributable to the existence of two distinct salary programs, neither of which had sex discrimination as a purpose or as an effect." 616 F.2d at 726. The court further found that the male comparator in *Aetna*, like Mr. Sweet in this case, was qualified for his higher salary by his experience and background. *Id.*

The court's conclusion in this case is also compatible with the result reached in many other cases. *See Maxwell*, 803 F.2d 444, (reclassification of job causing female employee to earn less than her male predecessor constituted factor other than sex); *Goodrich*, 40 F.E.P. 303 (imposing test of job-relatedness on fourth defense would render it meaningless; union membership rule is factor other than sex), *aff'd on other grounds*, 815 F.2d 1519 (D.C.Cir. 1987); *Patkus*, 769 F.2d 1251 (pay differential between female employee and her male successor which was caused by reorganization fell into factor other than sex exception); *Strecker v. Grand Forks City Social Services Board*, 640 F.2d 96 (8th Cir. 1980) (wage disparity caused by dual classification system which classified persons as well as practices fell into fourth exception; while classification system underpaid capable people, no showing that it did so on account of sex), *aff'd en banc*, 34 F.E.P. 1009 (8th Cir.1981); *Hodgson*, 473 F.2d 589.

This case is also distinguishable from several on which the plaintiffs rely. In *Grayboff v. Pendelton*, a case involving EOS's at the U.S. Civil Rights Commission, the court expressly found that the defendant's assertion that wage differentials were based on factors other than sex "appeared pretextual" and that the defendant employer "did consider [plaintiff's] sex in determining her salary." 36 F.E.P. 350, 356 (N.D.Ga.1984) [available on WESTLAW, 1984 WL 1110]. Similarly, in contrast to this case, in *Shulte v. Wilson Industries, Inc.*, the court found that wage disparities were based "entirely on sex" and, therefore, proscribed. 547 F.Supp. 324, 340 (S.D.Tex.1982).

Plaintiffs also cite *Molden v. United States*, 11 Cl.Ct. 604 (1987), which held that disparities in wages caused by a freeze on promotions under the Government's job classification system did not constitute a factor other than sex. To the extent that the legal analysis in *Molden* differs from that in the many opinions favorably cited in this decision, the court simply finds the *Molden* court's analysis to be unpersuasive. *Molden*, however, is also factually distinct from this case.

In *Molden*, female EOS's were being paid at a lower rate than their male counterparts. Ms. Molden was denied promotions at times when she was scheduled to receive them, because promotions were being frozen while the EEOC was working out grading problems. The solution of these problems took a number of years, during which male EOS's remained at higher grades than female EOS's doing the same work. There was no logical or business-related reason for the females in *Molden* to be paid less than the males. Rather, there were simply acknowledged problems with grading that took years to correct. Furthermore, there was some evidence in *Molden* that the promotion freeze may have been a pretext or applied in a sexually discriminatory manner. While Ms. Molden was denied her scheduled promotion to GS–12 in June 1981 allegedly due to the promotion freeze, three male co-workers were promoted to the GS–12 level in the fall of 1981. 11 Cl.Ct. at 607.

In contrast to the fact situation in *Molden*, the plaintiffs in this case were restricted to the GS–5 level at the time of their hire for a legitimate business-related reason, that is, to comply with the federal personnel laws and policies which limit how

quickly a federal employee may be promoted. The federal personnel system may not be entirely fair to its own employees, whose salary opportunities are more restricted than those of new employees, but any unfairness is not sex discrimination and is thus not appropriately remedied through the Equal Pay Act. *Strecker,* 640 F.2d at 103.

Plaintiffs also argue that Mr. Sweet obtained his salary due to the greater bargaining power of his gender. Mr. Sweet was initially offered a GS–7, but bargained up to a GS–9. Plaintiffs claim this case is comparable to *Chang v. University of Rhode Island,* 606 F.Supp. 1161 (D.R.I. 1985), which found that salary differentials between men and women at the University of Rhode Island were partly the result of the males' greater bargaining power. *Id.* at 1229. In this case, however, Mr. Sweet's greater salary was not the result of his gender's greater bargaining power. Sweet was able to bargain successfully for a GS–9 appointment because the EEOC had the discretion to hire him as a GS–9. Mr. Sweet had been certified as qualified for the GS–9 level and, as he was a new employee, no time-in-grade restrictions applied. Thus, the EEOC had discretion to hire Mr. Sweet at the highest rate for which he was qualified. It offered Mr. Sweet a GS–9 to obtain his acceptance before the imminent hiring freeze went into effect.

By contrast, the EEOC did not have discretion to hire any of the plaintiffs at higher than a GS–5, because they were either not eligible because of time-in-grade restrictions or related policies, or not qualified. Plaintiffs were not limited to the GS–5 level by a lack of bargaining power influenced by their sex. If the plaintiffs had been males, they still would have been restricted to the GS–5 level.

Accordingly, the defendant has proven that the initial wage differentials between plaintiffs and Sweet were permitted by the factor other than sex exception to the Equal Pay Act.[3]

### III. *Order*

For the foregoing reasons, it is hereby ordered that judgment enter for the defendant EEOC.

---

3. The wage disparities between plaintiffs and Sweet after their initial salaries were raised were also permissible. "Salary differentials that stem from unequal starting salaries do not violate the Equal Pay Act if the original salary inequity can be justified by one of the four exceptions to the Equal Pay Act." *Hein v. Oregon State College of Education,* 718 F.2d 910, 920 (9th Cir.1983). Thus, in this case any perpetuation of pay differentials caused by the starting salaries of plaintiffs and Mr. Sweet were permissible. In addition, after being employed, plaintiffs and Mr. Sweet were each evaluated in good faith pursuant to permissible, gender-neutral personnel policies. Each advanced within the EEOC at a different rate. Sex, however, was not a factor in any decision relating to their advancement.