**Mary A. RAYMOND, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–95C.**

United States Court of Federal Claims.

June 30, 1994.

---

Vicki G. Golden, Washington, DC, for plaintiff. M. DeSales Linton, Cashdan & Golden, of counsel.

Hillary A. Stern, Washington, DC, with whom was Asst. Atty. Gen., Frank W. Hunger, for defendant.

### ORDER

NETTESHEIM, Judge.

This case, before the court after argument on cross-motions for summary judgment, raises the issue of whether the United States Secret Service violated the Equal Pay Act, 29 U.S.C. § 206(d) (1988), in failing to promote plaintiff from a GS–12 to a GS–13 grade over a period of three and one-half years.

This case also presents a troublesome dilemma often faced by courts when applying remedial statutes, such as the Equal Pay Act. While these statutes are intended to remedy past injustices, they have the potential to work injustice in the present on innocent parties. A tension exists between the mandate of the Equal Pay Act that people doing equal work receive equal pay and the needs of employers to reward workers who excel in their positions. In the case at bar, this tension is heightened by the job and pay-rate classifications used by the Federal Government. Because of the presumption of discrimination contained in the Equal Pay Act, legitimate business practices suddenly may become illegitimate and unlawful unless the employer can prove that pay discrepancies were not the result of gender bias. This tension materializes in the Secret Service's need for flexibility in rewarding outstanding service, providing motivation, and maintaining flexibility of assignments in offices where often only two people were performing the work in question. Resolution of plaintiff's claim in the context of the Act's requirements and an employer's reasonable need to reward achievement in the workplace cannot be done preemptorily, nor in a context where the court is left to guess at the parties' motives and intentions.

### FACTS

The following facts are undisputed, unless otherwise noted. Mary A. Raymond ("plaintiff") is employed as a Physical Security Specialist ("PSS") in the Technical Security Division (the "TSD") of the United States Secret Service (the "Service"). She joined the Service in April 1983 and was assigned the pay grade of GS–07. The Service is a law enforcement agency headquartered in Washington, D.C., with offices throughout the United States. The TSD provides protection to the President, Vice President, former presidents, and other dignitaries and pro-

vides technical investigative support to the Service's field offices.

A PSS within the TSD is responsible for implementing security for protectees and providing technical advice in support of Service investigations. The TSD has developed a policy of rotating PSSs between field office assignments and headquarters to provide them with more comprehensive, career-enhancing exposure to the division's work and to allow for a more efficient transfer of technology from TSD headquarters to the field offices. The TSD considers the diversity of a candidate's experience within the division as an important factor when evaluating an individual for promotion and structures the assignment of PSSs to enhance their exposure to the division's various areas of work.

Although the first three promotions from a GS–07 to a GS–12 grade occur automatically at approximately one-year intervals, promotions to the GS–13 level are competitive. The availability of GS–13 positions is not unlimited in TSD field offices. Pursuant to an agreement reached with the Classifications Office of the Personnel Division, 50 percent of the PSS positions within the TSD were assigned a GS–13 level. This figure was determined after an audit of the PSS position revealed that roughly half the work done by PSSs in the field offices was at the GS–13 level. Thus, although the duties of field office PSSs encompassed both GS–12 and GS–13 work, the Government's requirement that a worker be paid at only one grade results in PSSs receiving disparate pay for equivalent work. A new GS–13 position cannot be created unless a member of TSD is either promoted out of the level or leaves the division.

Given the constraints on the number of GS–13 positions it is allotted, the TSD does not assign the GS–13 grade to specific positions within the division. The Special Agent in Charge (the "SAIC") of the division has complete discretion in determining to which field office the position will be assigned. Instead, award of the GS–13 grade is used as a type of merit-based award. Once a position becomes open in a field office, the position vacancy is announced and is filled pursuant to the Secret Service Merit Promotion Plan.

The plan requires the supervisor of the open position, with the assistance of a Personnel Division representative, to list the knowledge, skills, and abilities required for the position and their relative importance. These factors are then included on the vacancy announcement, as well as on the "Basic Supervisory Evaluation" used to assess candidates applying for the position. Employees must apply for these positions and compete on the basis of their respective service records.

If there are less than ten candidates for an available GS–13 position, the personnel division lists the applicants on a merit promotion certificate in alphabetical order and forwards the list to the selecting official. If there are more than ten applicants, each is judged by a three-member review panel composed of employees at or above the GS–13 grade level, two of whom must be from a division outside the one in which the position is located. The panel evaluates the candidates on standard forms using predetermined criteria that are assigned a numeric value. Based on the aggregate evaluation scores, the ten most qualified candidates are listed on the merit promotion certificate and forwarded to the selecting official. Using the input of other managers and supervisors, the selecting official chooses the candidate for the position from this list.

Plaintiff was promoted from her original grade at roughly one-year intervals until she reached the GS–12 level in April 1986. During that year she requested a transfer from her original duty station in Washington, D.C., to the Los Angeles field office in order to enhance her knowledge of the division. Her request for transfer was granted in February 1987. From this time until June 1991, plaintiff remained in the Los Angeles field office.

Plaintiff alleges that the Service violated the Equal Pay Act while she was stationed in both the Los Angeles and New York field offices. When plaintiff was first transferred to Los Angeles, William McCrory was the only other PSS in that office. While plaintiff remained a GS–12 for her entire stay in Los Angeles, Mr. McCrory was paid at the GS–13 grade beginning in January 1988. When Mr.

McCrory left for a position at the Service's headquarters in Washington, D.C., in October 1989, plaintiff remained the only PSS in the office until February 1990. It is unclear whether plaintiff assumed Mr. McCrory's duties for this period, as she alleges she did. Despite her efforts to obtain a promotion at this time, plaintiff remained at the GS–12 level. In June 1991 plaintiff was informed by Werner Herman Morlock, Assistant Division Chief of the TSD, that she would be transferred to headquarters in Washington, D.C., and would be replaced in the Los Angeles field office by Mr. McCrory. Plaintiff characterizes this move as an attempt to force her out of the Los Angeles field office to create a position for a male PSS. Defendant asserts that this move was prompted by a desire to enhance plaintiff's career opportunities. Mr. McCrory took over plaintiff's position in October 1991 and was paid at a GS–13 level.

In early July 1991, plaintiff submitted a request for a hardship transfer to the New York field office, which was granted the following October. Prior to her hardship request, plaintiff alleges SAIC Russell G. Miller offered her a transfer to the New York field office at a GS–13 pay grade. She declined the offer at that time. In his affidavit dated May 8, 1992, Mr. Miller denies that he ever offered plaintiff such a promotion. Plaintiff alleges that upon her transfer to New York in November 1991, she took over all the duties performed by her predecessor, Bruce Otterbacher. When the other New York PSS, Richard Zucchi, retired in December 1991, plaintiff claims she took over his duties in addition to her own. Defendant counters that Mr. Miller testified in deposition that he was informed by several people that plaintiff did not assume all of Messrs. Otterbacher's and Zucchi's duties. Both Messrs. Otterbacher and Zucchi were paid at the GS–13 level.

In January 1992 plaintiff again applied for promotion to the GS–13 grade. Defendant alleges that the position announcement involved the establishment of a new unit in the New York office. Although the Service received five applicants for this position, including plaintiff's, it did not make a selection for the position. Plaintiff alleges, and defendant admits, that the Service did attempt to reassign PSS Willie J. Cheatham to the GS–13 position. Mr. Cheatham had not applied for the position and was solicited by the Service for the position. Mr. Cheatham has averred in his affidavit dated May 13, 1992, that he was told by Mr. Morlock that "the SAIC didn't want to promote [plaintiff and other applicants] and if I would volunteer I would get the SAIC off the hook." Affidavit of Willie J. Cheatham dated May 13, 1992, p. 1.

In February 1993 plaintiff was selected for promotion to the GS–13 level. She had been turned down for GS–13 positions seven times previously for various reasons. Plaintiff's application for promotion under announcement 48–092 was turned down because her application was untimely. No selection was made under Announcement No. 03–92. Of the remaining five applications, on three occasions plaintiff did not score high enough to place her on the merit certificate and was passed over for candidates characterized by Clint L. Howard, the SAIC responsible for the selection, as more qualified on the remaining two.

Plaintiff's case was transferred to this court from the Southern District of New York on February 22, 1993. In her amended complaint, plaintiff alleges that the Service willfully violated the Equal Pay Act by discriminating against plaintiff on the basis of her sex. Plaintiff claims that the Service paid her at rates less than the rates it paid male employees performing work that required the same skill, effort, and responsibility, performed under similar working conditions. Plaintiff asks for a promotion to a GS–13 grade retroactive to October 3, 1989, and damages in an amount equal to the difference between the wages she received and the wages she would have received had she been promoted to the GS–13 grade, as well as costs and fees.

### DISCUSSION

1. *Summary judgment standard*

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to

judgment as a matter of law. RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Both plaintiff and defendant, as the moving parties, have the burden of establishing that there are no genuine material issues in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is reversible error for a court to resolve conflicts in evidence that might affect the outcome of a suit on a motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed.Cir.1992); *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1165 (Fed.Cir.1985); *see Waters v. Churchill,* —— U.S. ——, ——, 114 S.Ct. 1878, 1891, 128 L.Ed.2d 686 (1994) (reversing district court's grant of summary judgment in suit challenging employee's discharge since genuine dispute existed as to the actual grounds for her discharge).

### 2. *Equal Pay Act*

■ The Equal Pay Act was intended "to prohibit discrimination on account of sex in the payment of wages by employers...." H.R.Rep. No. 309, 88th Cong., 1st Sess. (1963), *reprinted in* 1963 U.S.C.C.A.N. 687. The statute prohibits employers from paying disparate wages for equal work based on gender. Section 206(d) of the Equal Pay Act provides, in pertinent part:

> No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

12 U.S.C. § 206(d).

The Act is not intended as an absolute mandate for equal pay among the sexes, however. Four specific exceptions to the prohibition on unequal pay for equal work are enumerated in the Act. Unequal pay for equal work is allowed if made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex...." 29 U.S.C. § 206(d)(1).

■ Plaintiff has the burden of proving a prima facia case under the Act by showing that her employer pays her a lower wage than her male counterparts for equal work performed under similar conditions. *Brennan v. Corning Glass Works,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Once a prima facia case is established, defendant has the burden of showing that the pay differential was the result of the use of a seniority system, a merit system, a production or quality based system, or a factor other than sex. *Id.* at 196, 94 S.Ct. at 2229. Defendant need not commit itself to one defense only. The deciding factor is whether defendant can show "that the pay differential was not based on sex." *EEOC v. Aetna Ins. Co.,* 616 F.2d 719, 726 (4th Cir.1980).

■ In order to qualify under the merit system defense, an employer must show that the merit system was an organized and structured procedure by which employees were evaluated systematically and in accordance with predetermined criteria. *Ottaviani v. State Univ. of N.Y. at New Paltz,* 679 F.Supp. 288, 337 (S.D.N.Y.1988), *aff'd,* 875 F.2d 365 (2d Cir.1989), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990). Under such a merit system, an employer may reward workers for outstanding experience, training, and ability, so long as the resulting salary differential is not based upon sex. *Aetna,* 616 F.2d at 725.

Plaintiff has cited several different occasions during which she performed work that was substantially the same as her GS–13 male counterparts, but was paid at a GS–12 level. Defendant does not dispute that plaintiff was, at times, performing the same work

as her male counterparts for a lower wage.* Rather, defendant contends that any disparity in pay between plaintiff and her male counterparts was due to the operation of the Service's Merit Promotion Plan. Defendant has submitted a declaration of Clint L. Howard, former SAIC of the TSD, explaining that the 50–percent limitation on the number of GS–13 positions often resulted in PSSs who performed roughly the same work receiving disparate pay. Indeed, defense counsel candidly stated in argument:

> In this case, during the period relevant to this lawsuit, the Secret Service admittedly did not make a very concerted effort to classify positions[;] rather it classified people according to their abilities, skills, qualifications, and knowledge.

Transcript of Proceedings, June 22, 1994, at 27.

Plaintiff counters defendant's affirmative defense by asserting that the plan fails to provide a method of comparing the performance of employees doing the same type of work. Plaintiff alleges that the Service never even determined which PSSs were performing the same work, even less whether work was done at a GS–12 or a GS–13 level. In addition, plaintiff characterizes the Service's Merit Promotion Plan as unreasonably subjective, allowing "unbridled discretion" in determining the salary of PSSs. Plf's Br. filed Apr. 6, 1994, at 16.

Plaintiff's first attack on defendant's merit system defense is unsupported by law and fact. The original allocation of GS–12 and GS–13 positions was based on a thorough audit of the work performed by field office PSSs. The audit revealed that the PSS position entailed both GS–13, as well as GS–12 level work. This finding that a single position requires different levels of skills, however, does not suggest that all PSSs were not performing the same work. The Service was not required to redefine the field office PSS position and segregate GS–12 and GS–13 tasks in order to avoid liability under the Equal Pay Act. Neither the cases cited by plaintiff nor the Equal Pay Act require an employer asserting the merit system defense to have based its merit system on an express finding that all affected employees perform the same work. Rather, the cases cited by plaintiff deal either with determinations of whether plaintiffs performed equal work or whether defendant had proved the fourth affirmative defense (factor other than sex). *See EEOC v. Maricopa Cty. Community College,* 736 F.2d 510, 515 (9th Cir.1984) (upholding district court's holding that defendant had shown that pay disparity was due to a factor other than sex, merit system not claimed); *Strecker v. Grand Forks Cty. Soc. Serv. Bd.,* 640 F.2d 96, 100 (8th Cir.1980) (holding that determination of whether work is equal must be based on "the nature of the duties actually required and performed, not the official job description or title" (citation omitted)); *Katz v. School Dist. of Clayton, Mo.,* 557 F.2d 153, 156 (8th Cir.1977) (same; no merit system defense pleaded); *Cayce v. Adams,* 439 F.Supp. 606, 608–609 (D.D.C. 1977) (holding that FAA violated Equal Pay Act when it continued to overpay male employees at GS–11 rate and underpay plaintiff at GS–8 rate after audit rated work performed by employees at GS–9).

An employer need not show that a merit system is devoid of subjectivity. The nature of a personal evaluation requires a certain degree of subjectivity. The Equal Pay Act mandates only that this subjectivity be applied using clear, predetermined criteria. As the *Fourth Circuit* stated in *Aetna,* "[a]n element of subjectivity is essentially inevitable in employment decisions; provided that there are demonstrable reasons for the decision, unrelated to sex, subjectivity is permissible." 616 F.2d at 726. Defendant has submitted the Service's Merit Promotion Plan, along with the rating sheets for several of the competitive evaluations that resulted in plaintiff's denial of promotion. The plan provides clear guidance to evaluators and limits subjectivity to the extent that such a system will allow.

---

* Defendant disputes plaintiff's assertion that she took over all the duties that had been performed by Messrs. McCrory and Zucchi. Defendant admits that the work performed by plaintiff was substantially the same as her counterparts, but apparently objects to the characterization that she performed the work of two PSSs.

The evidence in the record strongly supports defendant's assertion that the pay differential that existed between plaintiff and her male counterparts was due to the operation of a valid merit system or a factor other than sex. Several factual disputes remain, however, that prevent summary resolution of this dispute. Whether Mr. Miller offered plaintiff a GS–13 position in New York in 1991 is unclear. Such an offer may be inconsistent with the structured merit system that defendant claims controlled promotions. Mr. Cheatham's allegation that he was approached by the Service for the January 1992 position in New York because the SAIC wanted to avoid promoting plaintiff raises a possible inference of gender bias. These disputes cannot be resolved in summary proceedings. Although defendant has put forth strong evidence that it complied with the Act, the better course would be to proceed to trial. Plaintiff is admonished that the evidence so far indicates that the Service has shown the ability to muster a strong defense. At any rate, defendant has proved sufficiently that, if it did violate the Act, this violation occurred in good faith reliance on its Merit Promotion Plan and was not willful.

### CONCLUSION

Accordingly, based on the foregoing, the parties' cross-motions for summary judgment are denied. A scheduling order has been entered separately.